1807.                    WINGATE *vs.* DAIL.
JUNE.

Wingate          APPEAL from a decree of the Court of Chancery dismis-
vs            sing the bill of complaint. By the bill, answer, and tes-
Dail
A parol contract   timony taken in the cause, it appears that a certain *William*
between a father   *Dail*, having a daughter married to *Wingate*, the complain-
in law, and son in
law, that the fa-  ant, entered into a verbal agreement with him to sell to him
ther in law would
give a real estate  two parcels of land, on which *Wingate* then resided, for
to his grand son
in consideration  £150, being one half the value of the land; the other half he
of the son in law
the value of the   intended to give to *Wingate's* wife; and that *Dail* often de-
paying one half of
land—Not enforc-  clared that the land was to be deeded to *Wingate's* son.
ed, tho' possession
was held by the   That *Wingate* paid £40 in part of the purchase money,
son in law, and a
part of the pur-   and continued in possession, and paid the taxes on the land,
chase money paid.
which were charged to him by the direction of *Dail*, and
with the approbation of *Wingate*. That *Dail* made an en-
try in his book of accounts, crediting *Wingate* on the 25th
of August 1798, "By cash received for a contract for the
plantation where he now lives," &c. £40. That *Dail* af-
terwards had a son born, named *Joseph*, (the appellee,) and
in order to make provision for his son, declared his inten-
tion of taking the land from *Wingate*, and giving it to his
son, and in lieu thereof to give *Wingate* personal proper-
ty; which intention was made known to *Wingate*, who was
not altogether satisfied with the arrangement. That *Dail*
offered to return the £40 to *Wingate*, which the latter did
not refuse to take, but said he had no occasion for it, and
*Dail* said he would keep it for him until he should call for
it. *Dail* afterwards, by his will, devised the land to his
son, (the appellee,) and bequeathed sundry slaves to *Win-
gate's* wife.

HANSON, Chancellor, (2d July 1804.) It appears, that
to prevent the setting up of contracts, like the one stated
in the bill, was the object of the statute of frauds and
perjuries; and this court never did, and never ought, by its
decision, to defeat the salutary intent of the act.

It has, indeed, under some circumstances, enforced the
performance of parol contracts, but never in a case like the
present, where it remains uncertain whether or not there
was any contract, and even if there was a contract, it does
not appear clearly what was the engagement on the com-
plainant. *Decreed*, that the bill be dismissed, but with-
out costs.

From which decree the complainant appealed to this
court.

The cause was argued before CHASE, Ch. J. TILGHMAN, NICHOLSON, and GANTT, J.

*J. Bayly*, for the appellant, to shew that such a contract ought to be enforced, cited 1 *Eq. Ab.* 21. 1 *Vern.* 363. 2 *Vern.* 455. 2d pt. 1 *Eq. Ab.* 32, 42, 44. 1 *Atk.* 12, 15. 1 *Ves.* 83, 221, 297, 411. 2 *Ves.* 299. 3 *Atk.* 4.

*Shaaff*, contra, contended, that chancery would not enforce a contract which the party who applied to have it enforced had shown an unwillingness to comply with on his part. That a contract, if in writing, would not be enforced if there was proof that it had been rescinded by parol. 1 *Fonbl.* 392, (note e.)

THE COURT OF APPEALS *affirmed* the decree of the Court of Chancery.

* * *

### CLARKE vs. MAGRUDER, et al.

APPEAL from the General Court. This was an action of *assumpsit*, brought by the appellees, (the plaintiffs in the court below,) for goods *sold and delivered*, &c. The writ issued on the 9th of March 1799, and at May term 1802, the action was entered for the use of *Samuel Johnston*, and others. The defendant, at October term 1799, pleaded *non assumpsit*, and issue was then joined. He afterwards, at October term 1801, filed an *account in bar*, and gave notice of a *set off*.

Unless the contrary is proved, it is presumptive evidence that a clerk, who is dead, and who made certain entries on the books of his employer, delivered the goods, as charged. The defendant may set off, against the plaintiff's demand, a note of the plaintiff's accrued subsequent to the commencement of the action

1. The plaintiff, at the trial at October term 1804, produced the original partnership day books in court, and a witness to prove the hand writing of the clerk who made the entries in the books, the clerk being dead. This was resisted by the defendant's counsel.

CHASE, Ch. J. The court have no doubt upon the subject. It is to be presumed, the entries being made in the hand writing of the clerk, that he delivered the goods as charged. The defendant may prove the contrary, and if he does not, it is presumption, on the part of the plaintiffs, that the clerk who made the entries on the books delivered the goods.

2. The plaintiffs then read in evidence the original writ which issued in this case on the 9th of March 1799, (there being no endorsement at that time for the use of *Samuel Johnston*, and others,) and that it was served on the 19th