## JOHN MUNDORFF, and MARY, his wife, vs. EL-BRIDGE G. KILBOURN and BENJ. HOWARD.

In cases for the specific performance of contracts, the complainant must establish the very contract set up in his bill, and all the acts of part performance relied upon must be clear and definite, and refer exclusively to the alleged agreement.

Agreements to devise real estate may be enforced, by specific performance, against the devisees of the land, if it be otherwise disposed of by the party making the agreement, but such agreements are to be dealt with in equity no less strictly than other contracts within the statute of frauds.

All agreements to be executed in equity must be certain and defined, equal and fair, and proved as the law requires, and it is enough to doubt upon any one of these points to refuse relief.

If a party in the sale of a slave gives up to the vendee a part of the purchase money, in the hope that the latter would devise to the former's wife a certain tract of land, this imposes nothing more than an obligation of honor upon the vendee, out of which no action can arise.

APPEAL from the Equity Side of Baltimore county court.

This appeal was taken from a decree of the court below dismissing the bill of the appellants, which sought to enforce the specific performance of an alleged parol contract therein stated in reference to the devise of a tract of land.

This contract is alleged to have been made between Mundorff and one Caleb Stansbury, the grandfather of the former's wife, and is stated in the opinion of this court. Stansbury devised only a life estate in the land to complainant's wife, with remainder in fee to his son, Josiah Stansbury, who conveyed to Kilbourn and the latter to Howard. The bill charges that Kilbourn and Howard, prior to their purchase, had notice of complainants' claim, and prays for a conveyance in fee.

An interlocutory decree passed against Howard, but the answer of Kilbourn avers that he purchased the property from Josiah Stansbury, for a full and *bone fide* consideration, and without notice of the alleged agreement. That the receipt of Mundorff was delivered to him about the time of his purchase, which entirely disproves the claim of complainants, and he

relies on his purchase as a bar to any relief against him, and also upon the statute of frauds and limitations.

Mundorff's receipt filed with this answer is as follows: "Received of Mr. Caleb Stansbury two hundred dollars, in full payment of a servant girl named Ruth, and I do hereby relinquish all right, title, claim or interest, that I have or had in and to the said servant girl Ruth, and acknowledge myself to be fully paid, satisfied and contented."

The proof taken is sufficiently stated in the opinion of this court and in the argument of counsel. The court below, (FRICK, C. J.,) at the hearing of the cause dismissed the bill, and complainants appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Grafton L. Dulany* for the appellants. The contract is taken out of the statute of frauds, because the proof shows that it was not reduced to writing, by reason of assurances by the party now making the objection, that it was not necessary, and that the will already contained the clause agreed upon. But the acts of part performance are of themselves sufficient to take it out of the operation of the statute. 3 *Gill,* 137, *Rogers vs. Scarff.* 5 *Gill,* 483, *Baynard vs. Norris.* 11 *G. & J.,* 314, *Moale vs. Buchanan.* The proof is that Mundorff and wife entered into possession of the land, claiming it in fee and exercising acts of ownership over it, and are now in possession of it. That equity will decree the specific performance of a contract to devise land, see *Jeremy's Eq.,* 435. 1 *Story's Eq.,* secs. 246, 256. 3 *Ves.,* Jr., 38.

The answer of Kilbourn denies that he had knowledge of the claim of Mundorff and wife, but one witness swears positively that this claim was made known to him before his purchase, and this with pregnant circumstances, such as exist in this case, is sufficient to overthrow the answer. There was at least enough in the possession by Mundorff and wife to put him upon inquiry, which in equity is equivalent to notice.

Mundorff and wife, vs. Kilbourn and Howard.

10 G. & J., 316, *Hardy and Talburtt, vs. Summers and Wife.*
The receipt of Mundorff is but *prima facie* evidence, and may
be explained or contradicted by parol. 1 *H. & G.*, 139, *Hig-
don vs. Thomas.*  4 *H. & J.*, 9, *Gist vs. M. Guire.*

*E. G. Kilbourn* for the appellees.    The alleged contract is
not proven by competent testimony.    The receipt of Mundorff
is the *written evidence* of the *sale* of the servant, and cannot
be contradicted or explained away by oral testimony.    7 *Ves.*,
211, 218, *Woollam vs. Hearn.*    It is the highest and best
evidence of the contract, and ought not to yield to the unsup-
ported and improbable testimony of the witness, even if his
oral testimony could be weighed against it.

2nd. The answer denies all knowledge of the alleged con-
tract, and avers the purchase *bona fide*, for a full and fair con-
sideration.    The only evidence of actual knowledge by the
appellee before his purchase, is that of William R. Hiser.
The appellee therefore maintains, that inasmuch as the answer
denies and is responsive to the allegation of notice in the bill,
the testimony of one witness, not corroborated by circumstan-
ces, is insufficient to affect the appellee with notice.    2 *Story's
Eq.*, sec. 1528.

3rd. The possession by Mundorff, as stated by several of
the witnesses, can have no effect, for by the will of Stansbury
Mrs. Mundorff had a life estate in the land, and the posses-
sion was therefore in accordance with the complainants' rights
under the will, and ought rather to bind them to its provisions
and prevent inquiry, than put the appellees upon inquiry as to
their alleged title.

Tuck, J., delivered the opinion of this court.

This is a bill in equity filed by the appellants, seeking the
specific performance of a parol agreement relating to land,
on the ground of performance by the complainants of their
part of the alleged contract.    If there were no other objections
to the relief sought, we are not satisfied that the evidence in
the cause supports the allegations of the bill, and that for this

reason the decree should be affirmed. We need not multiply authorities to show that, in cases for specific performance, the complainant must establish the very contract set up in the bill; and that all acts of part-performance, relied upon to take the case without the operation of the statute of frauds, must be clear and definite, and refer exclusively to the alleged agreement. 2 *Story's Eq.*, secs. 762, 763, 764. *Wingate vs. Dail*, 2 *H. & J.*, 76. *Owings vs. Baldwin*, 8 *Gill*, 337. *Shepherd vs. Bevin*, 9 *Gill*, 32.

The bill states in substance, that Stansbury had purchased from Mundorff a negro girl for three hundred dollars; that Mundorff proposed to give up or release to him one hundred thereof, if he would agree to devise to Mundorff's wife in fee-simple, the land mentioned in the proceedings; that Stansbury assented to this, and paid Mundorff one hundred dollars in cash, and gave his note for one hundred, and took a receipt in full for the purchase money. It also states that he required an instrument of writing from Stansbury, but that he did not insist upon it, after he was assured by Stansbury that he had already made his will to that effect, and would not alter it; which however he did by afterwards devising to Mrs. Mundorff a life estate only in the land. Howard did not answer the bill, but Kilbourn's answer puts the complainant to the proof of his case.

The witness relied upon to prove the agreement, who was present at the time, says that Mundorff asked three hundred dollars, and that Stansbury said he would give two hundred, one hundred in cash and one hundred in his promissory note, and would give Mrs. Mundorff this land in fee-simple by his will. After some conversation as to the necessity for having this reduced to writing, and the witness having assured Mundorff that Stansbury had made his will to the effect stated by him, the parties closed the matter by a receipt from Mundorff for two hundred dollars, in full for this servant girl, in which Mundorff released all his right and title, and declares himself to be fully paid, satisfied and contented. What the difficulties were, which, as stated by the witness, the parties had met

at his house to close, we are not informed.  Certain it is that it no where appears, that Stansbury agreed to pay three hundred dollars for the servant woman.  If the parties were contracting for the woman at that price, it seems strange that a different sum was stated in the receipt.  It is said however, that a receipt may be explained, and in this respect differs from other instruments.  This is true ; but no attempt is made to explain this one.  The witness who prepared it, does not state that it was designed to be other than it is, or that it had any relation to the land, as part of the consideration in the purchase of the negro.  If it had specified three hundred dollars as the purchase money, it might have been shown that the land constituted a part of that consideration.  In *Shepherd vs. Bevin*, 9 *Gill*, 32, a party was permitted to prove that a receipt for a sum of money as a distributive share, was intended to operate as a payment of so much money for land. But that cannot be done here, because the $200 is shown to have been paid in another way, in money, and what was taken as its equivalent.

There are cases to show that agreements to devise real estate, may be enforced by specific performance against the devisees, if the land be otherwise disposed of by the party making the agreement.  But these we think, are to be dealt with no less strictly in equity, than other contracts within the statute of frauds.  Indeed there are considerations which should subject them to a more rigid application of the statute. We do not find in this record sufficient proof that Stansbury designed to bind himself by any obligation such as is now sought to be enforced.  A contract imports a mutual agreement of the parties to the same matter.  If this alleged contract be decreed to be performed, it must be because Stansbury supposed that he was paying three hundred dollars for the servant, and that Mrs. Mundorff was to have the land at his death, as part of the price.  This is by no means clear. It is at least uncertain, whether the parties designed it for a legal obligation.  In *Walpole vs. Orford*, 3 *Ves.*, 402, where an attempt was made to set up mutual wills on the footing of

Mundorff and wife *vs.* Kilbourn and Howard.

a contract, the Lord Chancellor laid it down as a general proposition, that all agreements to be executed in equity must be certain and defined ; equal and fair ; and proved as the law requires ; and that it was enough to doubt upon any one of these points to refuse relief, and in the case before him, he found great difficulty in determining whether the transaction was meant to be absolutely binding, or should rest upon honor. In the present cause Mundorff appears to have been aware, that such agreements should be in writing. Yet, when Stansbury declined to bind himself in that way, he remained satisfied with his promise that he would not alter his will, supported by the witness' assurance of his confidence in Stansbury. If he gave up one-third of what he deemed the value of the woman, in the hope that his wife would in consequence of this favor to her grandfather, become the owner of the land at his death, we do not perceive that any thing more than an obligation of honor was imposed on the testator, out of which no action can arise. Wills are ambulatory ; they can operate only after the death of the party ; and are liable to be changed at any time. Hence the utmost certainty should appear to authorize the court to set aside a solemn testamentary act in the manner proposed. It is almost impossible to conceive, that a man will deprive himself of the power of disposing of his property, whatever circumstances may arise to induce him to change his will, except for some controlling family considerations, and upon evidence free from doubt as to the existence of the agreement, and clear from ambiguity as to its terms. The most stringent doctrines of the court should be applied in such cases, especially where the alleged agreement is not in writing, as a protection against speculating arrangements sought to be enforced, as contracts, after one of the parties is no longer here to explain the conduct imputed to him, and defend himself against charges of bad faith or fraud. The subject is discussed by Lord Camden, in *Dufour vs. Pereira*, 1 *Dick.*, 419. See also *Izard vs. Middleton*, 1 *Desauss.*, 116. *Rivers vs. Rivers*, 3 *Desauss.*, 195.

We think that to grant relief on the present record, would be carrying the exceptions farther than the decided cases warrant, and against the manifest policy of the statute of frauds. Entertaining these views we need express no opinion on the questions of performance, and notice to the defendants of the equity set up in the bill of complaint.

*Decree affirmed with costs.*