John T. Williams, and Jane E. Williams, his Wife vs. Emily C. Shipley, George E. Shipley, and others.

*Assailing a Deed for Fraud—Insufficiency of Evidence to prove Contention of Complainants—Agreements to Allay Strife—Family Compromises.*

B. by her will, after making certain devises and bequests, devised and bequeathed all the rest and residue of her estate, both real and personal, to her grandchildren, equally. Subsequently to the making of her will, she conveyed to W., one of said grandchildren, a farm worth double her share under the will. After the death of B., a dispute arose between W. and the other grandchildren, the latter claiming that the farm should be brought into hotchpot for distribution; and a bill to compel this was filed by them against W. and her husband. Pending this suit, H., the mother of the grandchildren, addressed a letter, suggesting a compromise to the attorney of W., wherein she agreed to leave W. in her will an equal share of her estate with the other children, provided W. brought the farm into hotchpot for equal distribution; and also suggesting that a compromise could be made on the basis that W. should keep the farm and allow the rest of her grandmother's estate to be divided among the other grandchildren. An agreement was thereupon entered into, whereby W. was to keep the farm and be excluded from any participation in the residue of the estate, real or personal, of her grandmother. Nothing was said or alluded to in the agreement in respect to any contract to secure to W. a share in her mother's property. Afterwards the mother, in consideration of natural love and affection, made a deed conveying the greater portion of her real estate to four of her children, other than W. On a bill filed by W. and her husband against the mother and her said grantees, assailing said deed for fraud, it was Held:

1st. That agreements entered into to allay strife, and secure the peace of families, will be supported and enforced in equity at the instance of any of the parties who are to take a benefit under the arrangement, even though the party seeking to enforce it may not have contributed any portion of the consideration.

2nd. That the *prima facie* case as disclosed in the written evidence was clearly against the complainants; and the parol evidence offered, supplementary to the written evidence, to prove that it was a term or ingredient in the compromise arrangement that W. should share equally with the other children in her mother's estate, was insufficient to establish the contention of the complainants.

Wherever doubts or disputes have arisen with regard to the rights of different members of the same family, and fair compromises have been entered into to preserve the harmony and affection, or to save the honor of the family, those arrangements have been sustained by Courts of equity, albeit perhaps resting upon grounds which would not have been considered satisfactory if the transaction had occurred between mere strangers.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and IRVING, J.

*William P. Maulsby, Jr.,* and *Charles W. Ross,* for the appellants.

*James McSherry,* and *Milton G. Urner,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This case was brought to enforce an alleged compromise or family arrangement, entered into, as it is contended, for the purpose of equalizing the distribution or division of property, and of restoring peace and harmony, among the several children of Charles and Eleanor Hendry, deceased. The bill was filed on the 1st of Feb., 1881, by the present appellants against the appellees, and against Eleanor Hendry; but the latter died in 1882, after having answered the bill, but before the case was prepared

for hearing. The Court below decreed against the complainants and dismissed the bill, and this appeal is from that decree.

It appears from the record, that Mrs. Jane Burgee, the mother of Mrs. Eleanor Hendry, being possessed of considerable estate, principally of land, made her will in 1857, whereby, after making certain devises and bequests, she devised and bequeathed to her nine grandchildren, including the complainant Mrs. Jane E. Williams, the children of Mrs. Hendry, all the rest and residue of her estate, both real and personal, to be equally divided among them, share and share alike. Subsequently, to wit, in 1862, Mrs. Burgee made a deed of a farm, containing about 232 acres of land, to the complainant Mrs. Jane E. Williams, in consideration of natural love and affection. The value of the land thus conveyed is supposed to have been about $10,000. Mrs. Burgee died in 1866, without revoking her will, and which was duly admitted to probate. It was claimed by the brothers and sisters of the grantee in the deed that the land conveyed was intended to be the grantee's full share of her grandmother's estate, and that the object of anticipating the operation of the will was simply to designate the part of the estate that Mrs. Burgee designed her granddaughter to take. But, according to the terms of the will, Mrs. Williams was left to share equally in the rest and residue of her grandmother's estate, without any reference whatever to the part conveyed by the deed. This gave rise to dissatisfaction and contention among the grandchildren of Mrs. Burgee; and in 1867, a bill was filed by the other children of Mrs. Hendry against Mrs. Williams and her husband, setting forth the facts relied on and the contention of the parties, and asking that the land conveyed to Mrs. Williams should be brought into hotchpot with the land and other property devised and bequeathed by the will of Mrs. Burgee; and that, upon a valuation thereof, an equal distribution might be

made, to effectuate what was alleged to have been the intention of the testatrix.    To this bill, the father and mother of the devisees were made parties, and they, by their answers, admitted the facts alleged, and strongly sided with the complainants in their contention in that case.    The present complainants, as defendants in that case, by their answer, controverted the right to have the land that had been deeded to Mrs. Williams brought into hotchpot with the other property for division, and insisted that such was not the intention of Mrs. Burgee.    They insisted that the deed was an independent gift to Mrs. Williams, and that she was entitled to share equally with the other children of Mrs. Hendry in the division of the property that passed under the will.

Such being the position and contention of the parties in that case, Mrs. Hendry, the mother, aided in her effort by her husband, sought to effect a compromise of the controversy, and to restore peace and harmony among her children.    To that end, she addressed the letter of the 22nd of Augt., 1868, to the late Mr. Wm. J. Ross, who was the attorney for Williams and wife in the then pending litigation.    In that letter, she said to Mr. Ross, " I have concluded to write to you to have a compromise made between my daughter Jane and the rest of my children, by which you will insure the blessing promised the peacemaker, as I hope you have found out by this time the just cause my other children have to complain.    I and my husband have both made our wills, leaving my daughter Jane equal with the rest, provided she will come in equal with the other children in her grandmother's estate ; but if she will keep the farm and let the rest be divided, I believe there could be a compromise made in that way."

This appeal of the mother for cessation of strife and discord in her family, seems to have made a deep impression upon the counsel employed to conduct the litigation on the respective sides of the case.    For it appears that, without

Williams and Wife *vs.* Shipley, *et al.*

further adverse proceeding, an agreement was reduced to writing, and signed by the counsel concerned, and also by Williams for himself and wife, whereby it was stipulated that a decree should be passed for the appraisement and valuation of the real estate of Mrs. Burgee, for division among all the children of Mrs. Hendry, except Mrs. Williams; the agreement expressly providing, that the land conveyed to Jane E. Williams by Mrs. Burgee, by deed referred to, should be excluded from such valuation and division; but that the last named land should be allotted to Jane E. Williams, as and for her *full and entire* portion of the estate, real and personal, of said Jane Burgee; and that said Jane E. Williams *should be excluded* from any participation in the residue of the estate, real or personal, of said Jane Burgee, &c. This agreement was filed in the cause, and thereupon a decree was passed by the Court, on the 29th of Oct., 1868, whereby the terms of the agreement were fully adopted, and the rights of the parties decreed accordingly. Nothing was said or alluded to, either in the agreement or the decree, in respect to any contract or promise, on the part of Mrs. Hendry, to secure to Mrs. Williams an equal part or share in her property with her other children; and it would certainly occur to any one as remarkably strange, especially in view of the character of the counsel in charge of the business, if such had been in fact a term in the arrangement, that all mention of it should have been omitted.

It appears that Charles Hendry, Sen., the husband of Eleanor Hendry, died in January, 1877, and by his will he devised and bequeathed all his property to his wife. Afterwards, Eleanor Hendry, the widow, by her deed of the 15th of Sept., 1877, in consideration of natural love and affection, conveyed to her four daughters, Mrs. Smith, Mrs. England, Mrs. Addison, and Mrs. Shipley, the greater portion of her real estate, for their sole and separate use, as tenants in common, subject to a life estate,

reserved therein to the use of the grantor herself. This deed was placed upon record on the day of its date, and the grantees have been in possession of the property since the death of the grantor in 1882.

After the lapse of nearly three years and a half, from the time the deed was recorded, the present bill was filed, assailing the deed to the four daughters for fraud. The bill was filed against Eleanor Hendry, and her four daughters, grantees in the deed, and their husbands. It is charged, that in the compromise of the former suit, it was agreed on the part of Mrs. Hendry, for herself and husband, that if the complainants in this case would agree to keep the farm deeded to Mrs. Williams by Mrs. Burgee, and surrender and renounce all claim to participate in the division of the property that passed to the children of Mrs. Hendry under the will of the grandmother, that she, Mrs. Hendry, stipulating for herself and husband, would give to Mrs. Williams an equal share with her other children in her estate after her death. It is alleged that this proposition was accepted, and that, acting upon the faith of such promise of the mother, the complainants surrendered all claim under the will, and agreed to the settlement of the former suit as before stated. It is then charged that, by making the deed to the four daughters, the mother had placed it out of her power to carry into effect the contract made with Mrs. Williams, and that, consequently, such deed was in fraud of the rights of the complainants, and is, therefore, void. The prayer of the bill is, that the deed of Mrs. Hendry to her daughters be set aside, and declared to be null and void, as against the complainants; and for general relief.

The defendants, including Mrs. Hendry, have answered fully all the material allegations of the bill, and emphatically deny the making of any such contract as that alleged by the complainants. And whether any such contract as that alleged was in fact made, and whether it has been

Williams and Wife *vs.* Shipley, *et al.*

established by such proof, and with such degree of certainty, as will entitle the complainants to its enforcement, are the first and principal questions for consideration; for until the agreement be established, and shown to be of a character to be enforced by a Court of equity; the complainants are in no position to assail the validity of the deed to the daughters.

The principles of law that govern in such cases as this admit of no controversy. It is settled by a long line of cases, from the leading case of *Stapleton vs. Stapleton*, 1 *Atk.*, 2, (3 *Lead. Cas. Eq.*, 380,) to the present time, that agreements entered into to allay strife and secure the peace of families, will be supported and enforced in equity at the instance of any of the parties who are to take a benefit under the arrangement, even though the party seeking to enforce it may not have contributed any portion of the consideration. In the case of *Westby vs. Westby*, 2 *D. & War.*, 503, Lord Chancellor SUGDEN said, the current of authorities has been uniform, that whenever doubts and disputes have arisen with regard to the rights of different members of the same family, and fair compromises have been entered into to preserve the harmony and affection, or to save the honor of the family, those arrangements have been sustained by Courts of equity, albeit, perhaps, resting upon grounds which would not have been considered satisfactory, if the transaction had occurred between mere strangers. Many cases could be referred to in support and as illustrative of this general principle of equity jurisprudence, but we need not do more than refer to the cases of *Pullen vs. Ready*, 2 *Atk.*, 587 ; *Stockley vs. Stockley*, 1 *V. & B.*, 23, and the collection of cases to be found in the notes to the leading case of *Stapleton vs. Stapleton*, 3 *Lead. Cas. Eq.*, 380.

There is no doubt that a family arrangement was entered into for the settlement of the former suit in regard to the conflicting claims asserted under the deed and will

Williams and Wife *vs.* Shipley, *et al.*

made by Mrs. Burgee. But the question here is, what was really included in that compromise arrangement. The questions involved in that suit were settled, upon the election of Mrs. Williams and her husband not to bring the farm deeded to Mrs. Williams into hotchpot, and she and her husband agreed to renounce and abandon all claim to participate in the division of the property that passed under the will. But there is nothing disclosed in the terms of the written agreement to indicate in the slightest degree, that any agreement or promise, on the part of Mrs. Hendry, to include Mrs. Williams in an equal distribution of her property, formed an ingredient in that family arrangement. If such was in fact the arrangement, why was it not expressed? Why should so important a term in the settlement have been left dependent upon the uncertainty of human memory, when all other terms of the settlement were reduced to writing? There has been no sufficient answer given to this question.

The written agreement made, and decree passed thereon, would seem to conform exactly to the alternative proposition contained in the letter of Mrs. Hendry, wherein she suggested that if Mrs. Williams did not agree to bring in her farm and share in an equal division of the property, she could keep the farm, and allow the other children to divide among them the property that passed under the will. This proposition seems to have been made the basis of the settlement, and, in the adoption of that alternative, there was no promise or pledge on the part of. Mrs. Hendry to provide for equality, as between Mrs. Williams and the other children, in the disposition of her property. According to the testimony of Mr. Ross, who represented Mrs. Williams in the former suit, the letter of Mrs. Henry was the exclusive basis of the compromise, there being no other proposition made, of which he was cognizant. We must therefore look to the letter, in connection with the written agreement, to ascertain the

terms of the compromise. By the mode of adjustment first suggested in the letter, Mrs. Williams was required to bring her farm into hotchpot with the other property under the will, and to share equally in the division with her brothers and sisters, and, upon her so doing, she would share equally in the division of the mother's estate. But, by the written agreement entered into, as we have seen, Mrs. Williams neither brought her farm into hotchpot for division, nor did she share with the other children in the division of the estate under the grandmother's will. She simply retained her farm, which was something more than double in value the amounts severally received by her brothers and sisters from the grandmother's estate. It would seem to be clear, therefore, that an election was made between the alternative methods of adjustment suggested by the letter of Mrs. Hendry, and that the second alternative was adopted as the basis of compromise. Indeed, as the matter was actually adjusted, it is hardly supposable that such a claim as that set up by the complainants could have been contemplated. If Mrs. Williams could hold her farm, worth five thousand dollars more than either of her brothers and sisters received from the grandmother's estate, and still, by virtue of the arrangement, share equally with her brothers and sisters in her mother's estate, it is very manifest that equalization among all the children would not be attained; and if equalization was the object of the compromise, as it is assumed to have been, it is very clear that that object would be most signally defeated by upholding the contention of the complainants in this case.

The *prima facie* case, at least, as it is disclosed in the written evidence, is clearly against the complainants. And the parol evidence offered, supplementary to the written evidence, to prove that it was a term or ingredient in the compromise arrangement that Mrs. Williams should share equally with the other children in her mother's es-

tate is quite insufficient to establish the contention of the complainants, to say nothing of the opposing evidence. It is far from being of that certain and definite character of proof required in cases of this nature ; and when considered in the light of all the surrounding circumstances of the case, it utterly fails to carry conviction to the mind, clear of reasonable doubt. After a considerable lapse of time, such as intervened in this case, it is not to be expected that witnesses can testify with entire accuracy as to details and particulars of transactions supposed to be closed ; nor is it matter of surprise, where several witnesses, all possessing the same means of knowlege, speak of the same transaction, after such lapse of time, that they should fail all to recollect alike.

The testimony on the part of the defendants strongly negatives the claim set up by the complainants ; and Mrs. Hendry herself has acted apparently upon the supposition that she was entirely free and at liberty to do with her property as she pleased. And it must be assumed that she had that right, in the absence of proof sufficiently strong and conclusive to convict her of a fraudulent disregard of a binding obligation to her daughter. The effect of the contract set up here, if established, was to deprive Mrs. Hendry of the disposing power over her estate, either by deed or will, except as directed by the contract ; and to establish such contract, the proof should be of the most definite and conclusive nature. In such cases, as was declared by this Court, "the most stringent doctrines of the Court should be applied, especially where the alleged agreement is not in writing, as a protection against speculating arrangements, sought to be enforced as contracts, after one of the parties is no longer here to explain the conduct imputed to him, and defend himself against charges of bad faith or fraud." *Mundorff vs. Kilbourn,* 4 *Md.,* 464.

Upon the whole, this Court fully concurs with the Court below, that the proof on the part of the complainants is

Emmittsburg Railroad Co. *vs.* Donoghue, &c.

wholly insufficient to establish any such contract as that set up in the bill; the establishment of which being essential to the right of the complainants to impeach the deed to the daughters of Mrs. Hendry.

The decree of the Court below is therefore affirmed, with costs to the appellees.

*Decree affirmed.*