NICHOLAS LORENZO *v.* JOSEPH J. OTTAVIANO.

[No. 27, April Term, 1934.]

*Decided June 12th, 1934.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Israel S. Gomborov,* with whom was *Joseph F. Di Domenico* on the brief, for the appellant.

*J. Paul Schmidt,* with whom was *Isaac Lobe Straus* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order or decree of the Circuit Court of Baltimore City overruling a demurrer to a bill filed by Joseph J. Ottaviano against the appellant, Nicholas Lorenzo, also known as Nicola Lorenzo and Nick Lorenzo, and the Savings Bank of Baltimore and the Mayor and City Council of Baltimore.

The bill alleges that Frank Ottaviano died in the year 1886, leaving surviving him his wife, Annie Ottaviano, and the plaintiff, a son, Joseph J. Ottaviano, who was then an infant about one year of age, as his only heirs at law and next of kin.

That Frank Ottaviano, together with his wife, had, during his lifetime, conducted a fruit and vegetable busi-

ness in the City of Baltimore, and had "accumulated considerable cash money, as a result thereof," which belonged to and was the property of the husband and father. That upon the death of Frank Ottaviano, this property devolved upon his widow and his son, and thereafter the business was conducted under the control and direction of his widow until her marriage to Nicholas Lorenzo in 1889, when she was aided by her husband in the conduct and management of the business, which continued to prosper and "through the diligent efforts and business acumen of the said Annie Lorenzo," considerable property and market stalls and cash money were accumulated, that the son attended the public schools, and before and after school hours and on holidays and vacations, he rendered such assistance as was possible, in the management of the business. That upon reaching the age of fourteen, he left school and thereafter for several years assisted his mother in the management of the business, when, at the age of twenty-two or twenty-three years, the entire business was turned over to his control, and his mother retired from active participation in its management and control.

"That about the year 1915," the mother was the owner of two properties, 1107 and 1111 Thompson Street, in the City of Baltimore, had large sums of money on deposit with the Savings Bank of Baltimore, and in addition thereto, she owned a number of market stalls in Bel Air Market. These properties, as alleged in the bill, were accumulated and acquired from the profits derived from the business conducted by the mother of the plaintiff and later assisted by the defendant Nicholas Lorenzo and the plaintiff, and still later conducted by the plaintiff himself alone. That the title to one of these said properties, though acquired by and with the income from the business, conducted as aforesaid, was held in the name of Nicholas Lorenzo, and the other in the name of him and his wife, as tenants by the entireties. That a number of the market stalls, likewise acquired, were in the name of the defendant, while others were in the names of him and

his wife. That the money on deposit with the defendant the Savings Bank of Baltimore was "in the name of Nicholas Lorenzo, in trust for self and Annie Lorenzo, joint owners, subject to the order of either, the balance at death of either, to belong to the survivor."

"That, in or about the said year (1915)," it was *"definitely and mutually agreed by and between the said Nicholas Lorenzo and Annie Lorenzo, that upon the death of either of them, the survivor would, by last will and testament, leave all of said property, business and assets to the plaintiff."*

It is then alleged that the aforementioned agreement in italics was understood by both the husband and the wife "that all of the property, whether held in the individual name of Nicholas Lorenzo or in the joint names of the said Nicholas Lorenzo and Annie Lorenzo, consisting of the properties then owned by them, or the title to which they held, and any property subsequently acquired, should belong to and become the property of the plaintiff, the said Joseph J. Ottaviano, upon the death of the survivor of them."

That after this agreement, the plaintiff continued to control and manage the business and look after and attend to said property.

That, "in furtherance of said agreement, the said Nicholas Lorenzo did, some time in or about the year 1915, sign, publish and declare his last will and testament, wherein, after making a few minor bequests of property, which was considered as belonging to him individually, he gave, devised and bequeathed all the rest and residue of his estate, of whatever nature and kind, to the plaintiff absolutely, with the proviso that if the plaintiff died without issue the property should be divided between the brothers of the said Nicholas Lorenzo, and his brother's son." That this will was delivered to Nicholas Lorenzo, in whose possession it has been ever since its execution.

That on September 16th, 1932, Annie Lorenzo, the mother of the plaintiff, died intestate, leaving surviving

her the said Nicholas Lorenzo and her son, the plaintiff, as her only heirs at law and distributees. At the time of her death, the bill alleges that there was on deposit with the Savings Bank of Baltimore in the joint names of the said Annie Lorenzo and Nicholas Lorenzo, subject to the trust form above referred to, the sum of approximately $20,000. In addition thereto, were three properties: (1) No. 715 Aisquith Street, a fee simple property, in the name of both Nicholas and Annie Lorenzo, acquired by deed dated November 28th, 1922, seven years after the alleged agreement and the execution of the alleged will of Nicholas Lorenzo; (2) the fee simple property No. 1107 Thompson Street, in the name of both Nicholas and Annie Lorenzo, the title to which was acquired by deed dated October 5th, 1917, two years after the alleged agreement and the execution of the alleged will of Nicholas Lorenzo; and (3) the leasehold property No. 1111 Thompson Street, in the name of Nicholas Lorenzo, the title to which was acquired by deed dated April 9th, 1907. Also nine market stalls in Bel Air Market, some of which were in the name of Nicholas Lorenzo alone, and others in the name of both him and his wife.

It is then alleged that on or about November 13th, 1932, Nicholas Lorenzo, in contravention of the alleged agreement, devised to his blood relations the greater part of his estate, leaving the rest and residue, it being only a small part of his entire estate, to the plaintiff for the term of his natural life, and after his death to Antonio Lorenzo, a son of his brother, Saverio Lorenzo.

The bill then alleges that the plaintiff "is entitled to have the said Nicholas Lorenzo specifically and particularly perform said agreement by signing, sealing, publishing and declaring as his last will and testament, a will in manner and form and in conformity with the agreement made and entered into between the said Annie Lorenzo and Nicholas Lorenzo in or about the year 1915, as and for his last will and testament"; and that "the said Nicholas Lorenzo should be enjoined from selling, conveying, etc., the aforesaid property, belonging to the mother of

the plaintiff;" * * * and also "that he (the plaintiff) is entitled to have the said attempted last will and testament of Nicholas Lorenzo, dated November 13th, 1932 * * * annulled and set aside."

The bill concludes with the following prayers:

First, That Nicholas Lorenzo be "ordered and directed to answer the bill of complaint under oath and to make full discovery to the plaintiff of and respecting the last will and testament signed, sealed, published and declared by him in or about the year 1915."

Second, That Nicholas Lorenzo be "ordered and directed to specifically perform the agreement made and entered into between the said defendant and Annie Lorenzo by the due and proper execution of his last will and testament, in accordance with said agreement; and whereby all of the property referred to in said bill of complaint shall pass to and become the property of the plaintiff."

Third, That Nicholas Lorenzo be "restrained and enjoined from selling, transferring, etc. any of the property, market stalls or money herein mentioned and referred to, and that the defendant, the Savings Bank of Baltimore be restrained and enjoined from allowing said Nicholas Lorenzo to withdraw any of the funds on deposit with that bank, and that the Mayor and City Council of Baltimore be enjoined and restrained from allowing" him "to transfer any of the licenses for market stalls on the books of said municipal corporation;"

Fourth, That the said last will and testament of Nicholas Lorenzo, dated November 13th, 1932, be annulled and set aside.

The alleged agreement was an oral agreement, not reduced to writing, by which the defendant, Nicholas Lorenzo, was to devise unto the plaintiff, Joseph J. Ottaviano, the appellant, all his real and personal property; and the proceeding herein was instituted for the specific performance of that agreement.

As was said by this court, speaking through Chief Judge Boyd, in *White v. Winchester*, 124 Md. 522, 92 A.

1057, 1058, quoting approvingly from an article on specific performance in 36 Cyc. 735, written by John Norton Pomeroy, Jr.: "An agreement to make a certain disposition of property by a will is one which, strictly speaking, is not capable of a specific execution, yet it is within the jurisdiction of a court of equity to do what is equivalent to a specific performance of such an agreement. Such a contract is enforced after the death of the promisor by fastening a trust on the property in the hands of heirs, devisees, and personal representatives and others holding the property with notice of the contract or as volunteers." See *Gordon v. Spellman*, 145 Ga. 682, 89 S. E. 749; *Mundorff v. Kilbourn*, 4 Md. 459; *Wilks v. Burns*, 60 Md. 64; *Hamilton v. Thirston*, 93 Md. 213, 48 A. 709; *White v. Winchester*, 124 Md. 524, 92 A. 1057; *Soho v. Wimbrough*, 145 Md. 498, 125 A. 767; *Whitridge v. Parkhurst*, 20 Md. 62; *Scott v. Marden*, 153 Md. 1, 137 A. 518.

As stated in *Bolman v. Overall*, 80 Ala. 451, 2 So. 624, 626; "The principle upon which courts of equity undertake to enforce the execution of such agreements is referable to its jurisdiction over the subject of specific performance. It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament carrying out his agreement to bequeath a legacy; for this can be done only in the life-time of the testator, and no breach of the agreement can be assured so long as he lives. And, after his death, he is no longer capable of doing the thing agreed by him to be done." "There can be no doubt but that a person can make a valid agreement (binding himself legally) to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure; and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by conveyance, to be made at some specified future period, or upon the happening of some future event. It may be unwise for a man (in this

way) to embarrass himself as to the final disposition of his property; but he is the disposer by law of his own fortune, and the sole and best judge as to the manner and time of disposing of it. A court of equity will decree the specific performance of such an agreement, upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction." See note 60 *Am. Rep.* 111; *Warden v. Hinds,* 90 C. C. A. 449, 163 Fed. 201, 206, 25 L. R. A. (N. S.) 536.

In the last-cited case, it was said: "There is authority for the position that in some instances under an agreement to bequeath property the person to whom the bequest is to be made may in the lifetime of the proposed testator, in order to prevent the loss of the property through extravagance or other misconduct of the latter, file a bill *quia timet* on the equity side of the docket to have such testator declared a trustee to the extent of the claim." See 36 *Cyc.* 738; *Warden v. Hinds, supra; Gordon v. Spellman, supra; Chantland v. Sherman* (1910) 148 Iowa, 352, 125 N. W. 871; *Van Dyne v. Vreeland,* 11 N. J. Eq. 370, affirmed in *Van Dyne v. Vreeland,* 12 N. J. Eq. 142; *Wold v. Wold* (1917) 138 Minn. 409, 165 N. W. 229; *Duvale v. Duvale,* 56 N. J. Eq. 375, 39 A. 687, 40 A. 440.

The courts are not in entire accord as to the character of relief which a promisee in a contract to devise or bequeath land has against the promisor, where the latter violates the contract during his lifetime, and we have found no case, nor has our attention been called to one in this state, where the method of relief mentioned above has been adopted.

The right to proceed, in the lifetime of the promisor, where the facts and circumstances justify such a procedure, is based upon the principle that if the court did not then interfere for the protection of the promisee and secure the property at the death of the promisor, it might pass into the hands of a *bona fide* purchaser, and the promisee would then be remediless. A bill *quia timet* is to accomplish the ends of precautionary justice. The party seeks the aid of a court of equity because he fears some

future probable injury to his rights or interests. Such a proceeding may be resorted to in order to prevent wrongs or anticipated mischiefs and not merely to redress them when done. *Van Dyne v. Vreeland, supra.*

Some of the prayers in the present case, for example the second prayer asking that the defendant, Nicholas Lorenzo, be directed specifically to perform the agreement by the due and proper execution of a last will and testiment in accordance with the said agreement, do not seem to be the appropriate relief sought under a bill *quia timet* in cases of this character, where a trust only is to be fastened upon the property devised and bequeathed, and the testator declared a trustee to the extent of plaintiff's claim; but assuming, without deciding, that the plaintiff had the right to institute a proceeding in the lifetime of the promisor to enforce the agreement, in this case it should not be enforced, because of the reasons hereinafter stated.

The oral agreement in this case is like any other agreement for the conveyance of land so far as the statute of frauds is concerned. But as stated in 25 *R. C. L.* 587: "According to the general view * * * where the agreement is based on a valuable consideration, part performance may, as in cases of other oral contracts for the sale of land, take it out of the operation of the statute and permit its enforcement by courts of equity. The part performance, which will withdraw such a contract from the ban of the statute, must consist of an act or acts, which it clearly appears that the performing party would not have done in the absence of an agreement, or without the direct view of its performance. * * * To warrant the specific performance of an alleged oral agreement to devise lands, the court requires that the agreement be clearly and satisfactorily proven (or alleged), so as to leave no doubt as to its terms and character." See *Semmes v. Worthington,* 38 Md. 298; *Wilks v. Burns, supra; Soho v. Wimbrough, supra; Whitridge v. Parkhurst, supra; Mundorff v. Kilbourn, supra; Miller's Equity Procedure* section 683.

In *Mundorff v. Kilbourn, supra,* page 464 of 4 Md., this court, citing *Walpole v. Oxford,* 3 Ves. 402, said: "As a general proposition, that all agreements to be executed in equity must be certain and defined; equal and fair; and proved as the law requires; and that it was enough to doubt upon any one of these points to refuse relief." In *Mundorff v. Kilbourn* it was also said: "There are cases to show that agreements to devise real estate, may be enforced by specific performance against the devisees, if the land be otherwise disposed of by the party making the agreement. But these we think, are to be dealt with no less strictly in equity, than other contracts within the statute of frauds. Indeed there are considerations which should subject them to a more rigid application of the statute."

The principles enunciated in that case have many times been approved by this court, one of the last times in the case of *Soho v. Wimbrough,* reported in 145 Md. 498, 125 A. 767, where this court was speaking through Judge Digges.

Bearing upon this question, this court, speaking through Judge Alvey, said in *Semmes v. Worthington, supra* (page 319 of 38 Md.) : "The wisdom of the Statute of Frauds, in requiring contracts of great importance to be evidenced by writing, is within the constant experience and observation of every one engaged in the administration of justice; and it has been a matter of regret by the ablest Judges that the provisions of that statute should ever have been so far relaxed, as to allow the titles of parties to their estates to depend in any considerable degree upon the chances, the uncertainty and imperfections of human memory, to say nothing of their great exposure to fraud and perjury. As, however, the statute has in some cases been relaxed, and its literal and strict provisions departed from in order to prevent fraud, the rule established as applicable to those exceptional cases must be observed; the Court, however, requiring in all such cases full and complete proof, as to all the conditions upon which the bar of the statute can be removed." What was

148

there said is equally applicable to the necessity of clearness of expression and meaning of the agreement and the equity and fairness of its provisions.

An analysis of the alleged agreement will be necessary to determine its sufficiency as to all its essential parts, including the questions of consideration, part performance, and the reasonableness of its terms.

The alleged agreement, made more than seventeen years before the filing of the bill, has for its basis the fact, as alleged in the bill, that the accumulated money and the money with which said property was purchased arose from the profits of a business conducted: (1) By Frank Ottaviano, aided by his wife, until his death in 1886. The length of this period is not shown by the bill, but it is disclosed therefrom that, at the time of his death, his only child, a son, was but one year old, and his wife apparently a young woman, as she lived thereafter forty-six years. The probabilities are, unless he was very much older than his wife, that the business had not long been conducted by him or by him and her. (2) By the widow for a period of three years until her marriage in 1889 to Nicholas Lorenzo. And (3) by Annie and Nicholas Lorenzo, her husband, aided by her son Joseph J. Ottaviano, the plaintiff, to the date of the agreement in 1915, a period of twenty-six years.

The bill is silent as to the amount of money and property that had been accumulated at the date of the alleged agreement. It only states the amount of money and property accumulated at the death of Annie Lorenzo in 1932.

The bill alleges that the business was turned over to the plaintiff, the son, in 1907 or 1908, when he was twenty-two or twenty-three years old, seven or eight years before this agreement was made, at which time his mother retired from active participation therein. The bill does not state whether Nicholas Lorenzo did or did not thereafter continue to render service in connection with the said business, nor does it state upon what terms the business was taken over by the son, that is, whether he was compensated by payment of salary or by profits from the

business, nor is it disclosed by the bill that he, prior thereto, received any compensation for his services or any profits from the business. He may or he may not have done so. Lorenzo had given his services, in connection with those of his wife, to the business from 1889 to 1915, twenty-six years, and so far as disclosed by the bill, he may have rendered service to the death of his wife. It is not alleged that Lorenzo shared in any profits of the business, after it was taken over by the plaintiff, or that he was pecuniarily benefited by any act of the plaintiff that induced him to make the promise to devise and bequeath to the plaintiff all the property or estate he might have at his death, thereby depriving the alleged promisor of the right not only to dispose of the property he had at the time of the agreement, but likewise the property he might have accumulated in the years following. The plaintiff was not the son of Lorenzo and the latter was under no obligation, morally or otherwise, to maintain him or provide for him after his death.

It is true that Annie Lorenzo, the wife, allowed the money to be so deposited that, in the event of her husband surviving her, it was to be his; and she allowed the lands to be conveyed to him and to her, as tenants by the entireties, and they, too, would become his, should he survive her, but it must not be forgotten that he had for more than twenty-six years aided her in the accumulation of this money and property. It is not alleged that this property or money represented her entire estate at the time of her death, nor is it alleged that the son had, in the seventeen years during which he had conducted the business, accumulated nothing. At the time Lorenzo executed his first will, the plaintiff was a young man, just starting out upon his business career and probably had nothing, but, seventeen years afterwards, conditions with him may have materially changed, which may have justified the change made by Lorenzo in the disposition of his property, by his will of 1932.

The alleged agreement, so far as its terms are disclosed by the bill, is not shown to be reasonable, and it also fails

to show that the acts of the plaintiff or those of Lorenzo, including the execution of the first will made by him, amounted to a part performance of the agreement. It is contended by the appellant that the execution of the will of 1915 was a memorandum, which in itself amounted to a part performance, sufficient to take the agreement out of the operation of the statute. It has been so held by some authorities, but the authorities are not in accord thereon, but certainly the will could not be made to serve this purpose, unless it is in accord with the alleged agreement.

The agreement in this case was, as hereinbefore set out, that it was "definitely and mutually agreed by and between the said Nicholas Lorenzo and Annie Lorenzo, that upon the death of either of them, the survivor would, by last will and testament, leave all of said property, business and assets to the plaintiff." And it was understood by the husband and wife, as alleged, "that all of the property, whether held in the individual name of Nicholas Lorenzo or in the joint names of the said Nicholas Lorenzo and Annie Lorenzo, consisting of the properties then owned by them, or the title to which they held, and any property subsequently acquired, should belong to and become the property of the plaintiff, the said Joseph J. Ottaviano, upon the death of the survivor of them."

The property was not so devised under the alleged will. The bill specifically alleges that, by the will referred to, he devised some of his property, which he regarded as his, individually, to others, and the property devised and bequeathed to the plaintiff was devised by him with the proviso that, if the plaintiff died without issue, the property should be divided between the brothers of the said Nicholas Lorenzo and his brother's son, which was not a devise of all of his property or his estate therein to the plaintiff.

Because of the reasons assigned, the demurrer, we think, should have been sustained. This being our conclusion, the order or decree of the trial court will be reversed.

*Order or decree, overruling the demurrer, reversed, and the bill dismissed, with costs to the appellant.*

## Opinion on Motion for Modification.

A motion of the appellee that the order and decree on this appeal be modified to permit the filing by him of an amended bill of complaint in the cause has been duly considered, and without passing upon the sufficiency of any particular amendment suggested by the appellee, it is ordered by the Court of Appeals this 4th day of October, 1934, that its previous order and decree be modified and that the order and decree now be that the cause is remanded to the end that the appellee may make application to the Circuit Court of Baltimore City for leave to file such an amended bill of complaint as the Circuit Court shall find does not depart from the case presented in the original bill.