EXCHANGE NATIONAL BANK OF TAMPA, a National Banking Corporation, as Administrator C. T. A. of the Estate of Hiram L. Stevenson, Deceased, v. DORA H. BRYAN.

165 So. 685.

Division B.

Opinion Filed February 6, 1936.

*McKay, Withers & Ramsey,* for Plaintiff in Error;

*Himes & Himes* and *C. Edmund Worth,* for Defendant in Error.

TERRELL, J.—Early in January, 1930, Hiram L. Stevenson of St. Joseph, Missouri, established his residence at Tampa, Florida, in the home of Mr. and Mrs. J. N. Bryan of that city. Stevenson was a retired dry goods merchant, a bachelor about sixty-five years old, without living father, mother, or other near relative except two sisters living at Wellston, Ohio. He was worth then and at the time of his death not less than $175,000, most of which was liquid. Immediotely prior to coming to Tampa Stevenson had lived with his siters in Ohio for several years but his relations with them were not satisfactory. He was afflicted with a chronic heart ailment known as angina pectoris and at times required constant attention. He had known Mr. Bryan when he was in business in St. Joseph years before and called on him as soon as he arrived in Tampa. After looking about Tampa and St. Petersburg with Mr. and Mrs. Bryan he became impressed with the Bryan home and made Mrs. Bryan a proposition that if she would furnish him board, lodging, care, and a home for the remainder of his life he would pay her $100.00 per month and leave her $50,-000.00 at his death. His proposition was accepted and he moved into the Bryan home where he continued to live under this arrangement until his death July 20, 1933. Mrs. Bryan performed the agreement fully on her part and Mr. Stevenson paid her the $100.00 per month but did not provide the $50,000.00 for her at his death as he agreed to do nor any part of it.

Relying on this statement of facts, Mrs. Bryan filed her declaration in the Circuit Court of Hillsborough County against the Exchange National Bank of Tampa as administrator C. T. A. of the estate of Hiram L. Stevenson,

claiming damages in the amount of the promised bequest. A demurrer to the declaration challenging the sufficiency of the agreement sued on was overruled. Pleas by defendant invoking the statute of frauds, the statute of wills, and the laws of the State of Missouri, were assailed by demurrer and held to be insufficient for that purpose. The action being one in express assumpsit to recover moneys promised, went to trial on a plea of payment, the burden of proving which was on the defendant, and a plea of never promised as alleged, which put in issue the making of the contract as charged, the burden of proving which was on the plaintiff. The making of the contract was proven beyond question and there was no evidence offered to support the plea of payment. The jury returned a verdict for the full amount claimed on which final judgment was entered and the present writ of error was taken thereto.

The first question with which we are confronted is whether or not a parol agreement to· make provision in one's will of substantial goods or money in return for support and maintenance during life is binding and enforceable in this state.

This question was raised by the demurrer to the declaration and was answered in the affirmative. Contracts of this character have been generally upheld in the absence of statute requiring them to be in writing. The rule universally followed was well stated in the matter of the application of *Ex parte* Simons, 247 U. S. 231, 38 Sup. Ct. 497, 62 L. Ed. 1094, where the Court held that no doubt alleged contracts to make a provision by will must be approached with great caution in the matter of proof, but there is no doubt that, if proved, they are valid so far as no statute intervenes. So much seems to be assumed by the order of the judge, and is the law, we believe, of New York

as well as of other states and England. But, if valid, we see no reason why a contract to bequeath a certain sum should not give rise to an action for damages if broken, as certainly as a contract to pay the same sum in the contractor's life, or at the moment of the contractor's death.

It is also conclusively settled that such contracts cannot be avoided on the ground that they work a revocation of the will by parole. The policy of enforcing them was first questioned but now their validity is uniformly supported by the law writers and the decisions if they possess the elements of a valid contract and are otherwise enforceable. 1 Page on Wills (2nd Ed.) page 157, Sec. 89, where cases from more than half the states in the Union are cited in support of this view; Schouler on *Wills* (6th Ed.) Vol. 1, Sec. 694; Alexander on *Wills,* Vol. 1, Sec. 135; Brooks v. Yarborough, 37 Fed. (2d) 527; Lorenzo v. Ottaviano, 167 Md. 138, 173 Atl. 17, 179 Atl. 536; Banks v. Howard, 117 Ga. 94, 43 S. E. 438. This is a case of first impression in this Court, but the rule as thus stated is hereby approved. Redfearn on Wills and Administration of Estates in Florida, 21, contains a splendid discussion of the subject.

In jurisdictions requiring that such contracts be reduced to writing or evidenced by some note or memorandum in writing, a contrary rule would prevail. Zellner v. Wassman, 184 Cal. 80, 193 Pac. 84; Dixon v. Lamson, 242 Mass. 129, 136 N. E. 346; Hertzog v. Hertzog, 34 Pa. St. 418, overruling prior decisions of that State. The early decisions in California and Massachusetts support the rule as approved here. Wellington v. Apthorp, 145 Mass. 69, 13 N. E. 10; Morrison v. Land, 169 Cal. 580, 147 Pac. 259.

But plaintiff in error contends that the contract in question cannot be enforced because in conflict with the Florida Statute of Wills. Sections 5462 and 5463, Compiled

General Laws of 1927, Sections 3597 and 3598, Revised General Statutes of 1920, requiring among other things that all wills of personal property be in writing.

The answer to this question is that such contracts are made in performance of obligations entered into on the part of the obligor, that they are made in consideration for services rendered rather than for the purpose of conveying gifts, and are, therefore, tested not by the fact of whether they conform to the statute of Wills but whether or not they meet the requirements of a valid contract. Miller v. Western College, 177 Ill. 280, 32 N. E. 432; First Presbyterian Church of Mt. Vernon v. Dennis, 178 Iowa 1352, 161 N. W. 183. White v. Winchester, 124 Md. 518, 92 At. 1057. Price v. Jones, 105 Ind. 543, 5 N. E. 683; Knox v. Perkins, 86 N. H. 66, 163 Atl. 497; Sheldon v. Blackman, 188 Wis. 4, 205 N. W. 486; Robbins v. Robbins' Estate, 175 Mo. App. 609, 158 S. W. 400; Andrews v. Andrews, 116 Wash. 513, 199 Pac. 981.

It is next contended that the contract is in violation of the statute of frauds, Section 3873, Revised General Statutes of 1920, Section 5780, Compiled General Laws of 1927, in that the price of money promised by the contract was the subject of a sale, that Mrs. Bryan occupied the position of a buyer and Mr. Stevenson that of a seller.

We perceive no merit to this contention and to uphold such a theory would destroy and throw into confusion the law of sales contracts in this state. We find no respect in which the statute of frauds was violated.

The contract involved in this case was entered into in good faith, the parties were *sui juris,* and there is not a hint that it was induced by fraud or overreaching, it was proven beyond question, and we are pointed no valid reason why it should not be enforced. It is not shown to work

a hardship on anyone and the evidence shows conclusively that Stevenson intended to make the promised bequest for the benefit of Mrs. Bryan, but was intercepted by death. The judgment below is accordingly affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.