Hopkins *vs.* Roberts and Wootton, Trustees.

(Decided 30th June, 1880.)


ALVEY, J., dissented.

---

JOHN P. HOPKINS *vs.* JOSEPH K. ROBERTS, JR., and RICHARD WOOTTON, Trustees.

*When the Specific performance of an Oral Contract for the Sale of Land may be enforced.*

An oral contract for the sale of land, to be specifically executed, must be plain, just, reasonable, *bona fide*, mutual, and certain in all its parts; and if it be wanting in any one of these essentials, it cannot be enforced. Nor will a Court of equity enforce contracts depending upon parol evidence, and part-performance, unless the existence of the contract, the terms, and the acts of part-performance, are sustained by clear and satisfactory proof.

APPEAL from the Circuit Court for Prince George's County, in Equity.

This appeal was taken from an order of the Court (MAGRUDER, J.,) below, finally ratifying and confirming a sale to John P. Hopkins, reported by the trustees, Roberts and Wootton, and requiring the said Hopkins to pay or bring into Court the sum of $1308.75, being the amount of the purchase money, after crediting the sum of $30, admitted by the trustees to have been paid to the trustee Wootton, or show cause to the contrary, &c. The case is stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*C. C. Magruder, Jr., Frank H. Stockett* and *C. C. Magruder*, for the appellant.

*Jos. K. Roberts, Jr.*, for the appellees.

BOWIE, J., delivered the opinion of the Court.

The question presented by this appeal is, whether a sale reported by the appellees, as trustees, to the Circuit Court for Prince George's County, in the matter of the real estate of Anne Elizabeth Wootton, deceased, should be ratified? The deceased, by her last will and testament, dated the twentieth of November, 1866, duly executed to pass real estate and admitted to probate by the Orphans' Court of said county, devised and directed, that when certain mortgage debts therein mentioned should become due, if they should become due during the life of her mother, Daniel Clarke, as trustee, and her brother, Richard Wootton, should, in their discretion, have power to sell and convey so much of the real estate of which the testatrix died seized and possessed, as might be necessary to pay the said mortgage debts, or to raise by mortgage upon the said

real estate executed by them jointly, such sum as should be necessary to discharge the mortgage debts. Messrs. Clarke and Wootton, by virtue and in pursuance of this power, reported to the Circuit Court for Prince George's County, on the thirteenth of January, 1874, a sale of two hundred and eight and a quarter acres of land to John P. Hopkins, the appellant, for $5606.95, which sale was finally ratified and confirmed.

Mr. Clarke having died in the interim, on the twelfth of April, 1878, Messrs. Wootton and Roberts filed their report in the said case, setting forth the preceding matters and sale, and further reported : " That the aforesaid sum of money not being sufficient for the payment of the mortgage debt, *as well as a certain judgment debt due by the said Anne Elizabeth Wootton to a certain John T. and Richard Hardesty,* the said Daniel Clarke and Richard Wootton did, on or about ———— February, 1875, sell unto the said John P. Hopkins another portion of the real estate of the said Anne Elizabeth Wootton, containing fifty-nine and one-half acres, at and for the sum of $22.50 per acre, amounting in the whole to $1338.75 ; that the said John P. Hopkins paid to the trustees, on account of said purchase, the sum of thirty dollars in cash, and took possession of said portion of said real estate last sold, and has been in possession thereof since that time, receiving and appropriating to himself the issues and profits therefrom, but has failed, to the present time to pay any further portion of said purchase money ; that since said sale, on or about the first of May, 1876, the said Daniel Clarke died, before having reported, together with the trustee, Wootton, the sale for ratification. The trustees, therefore, deeming said sale advantageous to said estate, recommend the same to the Court for ratification."

On this report, an order of ratification "*nisi*" was passed.

The appellant filed an answer to the petition and report of the appellees, and replying to that portion, in regard

to the alleged second sale, denied that he ever afterwards purchased another portion of said real estate of the late Daniel Clarke and said Richard Wootton, trustees, as alleged in said petition and report; further answering, he said that Mr. Wootton, one of the trustees, being indebted to him in a large sum of money, and he being desirous to secure the same, it was agreed between Wootton and himself, that he should take another portion of the land of the testatrix, (of which Wootton held the reversion in fee,) in satisfaction and payment of Wootton's debt to him, and Wootton promised to procure Clarke's assent to the arrangement; that Clarke afterwards refused to sanction it; that Clarke never regarded the pretended sale as binding on the trustees, or on the respondent, and, therefore, never reported the same to the Court for ratification; that the pretended sale, was never reduced to writing, nor any written memorandum made of the same, signed by any of the parties, and it is, therefore, void under the Statute of Frauds, which the respondent pleaded, and relied upon, against its ratification and enforcement; that he entered into possession of the land, in pursuance only of the contract and terms of purchase between himself and Richard Wootton, above stated, viz., that the amount of Richard Wootton's indebtedness to him, should be credited on the purchase, &c. Testimony was taken by the appellant and appellees in support of their respective versions of the contract, and in proof of the collateral facts, tending to establish, or refute them.

Messrs. Hopkins and Wootton depose to the making of a verbal agreement for the purchase of a lot of fifty-nine and a half acres; but they agree in nothing else, and flatly, and broadly contradict each other. Mrs. Elise Wootton, is the only other witness, who was present at an interview between Messrs. Clarke and Wootton and the appellant.

"She heard the conversation between Messrs. Clarke, Wootton and Hopkins, in relation to the fifty-nine and a

half acres of land; Mr. Clarke told Mr. Hopkins that he had come down to make a final settlement of the purchase of the land, and he wanted it settled up, as it had been going along so long; Mr. Hopkins, then asked Mr. Clarke, if he were going to allow his account against Mr. Richard Wootton, as part payment of the purchase money for the land; Mr. Clarke, said he had nothing to do with any private affairs he and Mr. Wootton had, whatever, as he had come down to settle up Miss Lizzie Wootton's estate, and wished it settled at once;" * * * * * * *

"After Mr. Clarke said most emphatically that Hopkins' claim against Mr. Wootton, had not anything to do with the purchase of the property, Mr. Hopkins, then told Mr. Clarke, that he would try and raise the money and pay for the property."

This evidence turns the scale in favor of Mr. Wootton's representation, that there was a *final* agreement on the part of the appellant to take the second portion of the land, and pay for it; yet it supports Hopkins in his assertion, that there had been an understanding between Wootton and himself, that Wootton's debt to him was to be credited in payment for the land, that the inducement for the purchase was to secure a large debt, standing upon open account and unsecured. Neither the report, nor the evidence furnishes any data of the terms of the contract, or the subject-matter, in definite terms. There is no description of the property by which it can be located, no time fixed for the payment of the purchase money, hence the Court below assumed the terms were cash.

Such an assumption might be very probable, if the appellant's theory, that his debt was to be paid, prevailed, but it is very unlikely otherwise. Neither mere occupation of the premises, without showing it was in pursuance of the contract to be performed, nor payment of part of the purchase money, constitutes such part-performance as

will induce the Court to enforce specific performance. There was no mutuality of obligation in the case presented to us by the evidence. The appellant, if ever so anxious to complete the contract as proved by appellees' witnesses, was entirely at the mercy of the appellees. They might either have dissolved or enforced the contract at their pleasure. The appellees slept on their claim more than three years before reporting the sale, and were guilty of laches in asking for its confirmation if a sale was really intended. Independently of the question, whether the sale reported in this case is a sale within the Statute of Frauds, this Court has very emphatically said in recent cases, that an oral contract for the sale of land, to be specifically executed, must be plain, just, reasonable, *bona fide,* mutual, and certain in all its parts, and if it be wanting in any one of these essentials, it cannot be enforced; nor will a Court of equity enforce contracts depending upon parol evidence and part-performance, unless the existence of the contract, the terms, and the acts of part-performance, are sustained by clear and satisfactory proof. *Reese vs. Reese & Smith, Trustees,* 41 *Md.,* 554; *Stoddard vs. Tuck, Ex'r of Bowie,* 5 *Md.,* 37; *Smith vs. Crandall,* 20 *Md.,* 500; *Worthington vs. Semmes,* 38 *Md.,* 298. Order appealed from reversed, and sale set aside, with costs to the appellant.

*Order reversed, &c.*

(Decided 30th June, 1880.)