# WILLIAM R. BLUNT

*vs.*

# BRADLEY T. J. BLUNT.

*Infant Remainderman—Protection by Decree—Specific Performance—Quantum of Proof—Decree—Multifariousness.*

Where a life tenant of certain land, in consideration of the conveyance to him of other land, allowed the cutting of the timber on the former land, and one of the remaindermen was an infant, it was proper to extend the life estate and remainder to the latter land, acquired by the life tenant.     . p. 196

While the quantum of proof in a proceeding for specific performance is greater than that demanded in most classes of civil cases, it is not proper to say that in such a proceeding the contract sought to be enforced must be so clearly established as to satisfy the court beyond all reasonable doubt.     p. 197

Where there had been a consolidation of two cases, in one of which appellant was defendant and in the other of which he was plaintiff and, by the agreement of counsel of the respective parties, upon the consolidation, the decree was to be such as would fully meet the rightful claims of both parties, *held* that the decree could not be questioned as being multifarious and as decreeing relief in excess of that prayed in the bill, there being infants' interests involved as well as those of the litigating parties.     p. 200

*Decided March 16th, 1920.*

*Motion for reargument denied April 29th, 1920.*

Appeal from the Circuit Court for Baltimore County (McLANE, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, STOCKBRIDGE and ADKINS, JJ.

*Guy W. Steele,* with whom were *W. W. Parker* and *Joseph L. Donovan* on the brief, for the appellant.

*T. Scott Offutt* and *Noah E. Offutt,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

When Amanda F. W. Blunt died she left a will and codicil duly executed to pass real estate in Maryland. By the terms of the instrument she made a division of farm lands situate in this State, among her several children, with the exception of William R. Blunt.

Her son William thereupon filed a caveat to the will. This caveat was concluded by a compromise agreement entered into between William R. Blunt and his brothers and sisters, under which a certain piece of land was to be conveyed to William. Thereupon the verdict of a jury was taken sustaining the will, and that phase of the litigation closed.

Following this came two suits, one in which William R. Blunt was the plaintiff and his brothers and sisters the defendants, the object of which was to require a specific performance of the terms of the compromise, and the conveyance to William R. Blunt of the lot of land which by that compromise he was to receive.

There was also a bill filed by Bradley T. J. Blunt against William R. Blunt and others for the specific performance of an alleged contract, by the terms of which William R. Blunt was to convey to his brother Bradley a portion of the lot which it had been agreed he should receive in the division of the estate of his mother.

The theory of this bill was that the consideration for this transfer was the right to cut the timber on a certain other lot of ground, which had been devised to Bradley for life, with remainder to his children.

In the bill filed by William R. Blunt the theory was that of a sale of the property which he should receive under the compromise agreement for a cash consideration of $2,500,

to be secured by a mortgage upon the land, and that so far as the timber was concerned on the other lot, he was acting merely as the agent of his brother Bradley.

In the bill which William R. filed he prayed for the specific enforcement of the terms of the compromise.

The two cases were then consolidated, and the consolidated cases heard before the judge in Baltimore County, sitting as a court of equity, by whom it was decreed that William R. Blunt was entitled to have conveyed to him the property specified in the compromise agreement, and that the contract of sale between Bradley and William R. had been in part performed, William R. having received the lumber, and Bradley having exercised ownership over the part agreed to be conveyed to him by renting the same out, by which part performance the case was removed from the operation of the statute of frauds, and the Court, to some extent at least of its own motion, inasmuch as the timber had been cut on the land of Bradley, which under the terms of his mother's will he had but a life interest in, decreed that the life interest with the remainder to his children should be made to apply also to the land to be acquired from William. As one at least of the remaindermen was an infant the Court could do no less, as the timber had been cut from the land in which there were these remainder interests, and it was the duty of the Court to protect the interest of the infants.

At the time when the contract, whatever it was, was made, it was impossible for William R. Blunt to have made a deed of the property to his brother Bradley, inasmuch as no title to it had ever been conveyed to him by his brothers and sisters, in accordance with the provisions of the compromise agreement.

The law of specific performance is well settled by many adjudications, both in this State and elsewhere, to only one of which does it seem necessary to refer in this opinion. It is well summarized in 25 *R. C. L.,* pp. 203-258, and in *Miller on Equity,* Sec. 656, 660. Nor does there seem to be any

serious contention between counsel as to what the law is, unless it is as to the amount of proof required.

It was said in the oral argument and repeated in the printed brief, that the contract sought to be enforced must be "so clearly established as to satisfy the Court beyond all reasonable doubt." This is the familiar form of expressing the rule of the criminal law as to the character of proof requisite to sustain a conviction, and for this reliance is placed upon the language in *Semmes* v. *Worthington*, 38 Md. 298, 318.

The expression of JUDGE ALVEY in this case must be taken in connection with the facts as they were shown in that case, which in many respects was quite different from the case at bar. It must not be understood as importing the rule of the criminal law into an equity case, while it is perfectly true that the quantum of proof required in a case for specific performance is greater than that demanded in most classes of civil cases.

The case as presented in this Court is entirely a question of fact and not a question of law. It is not an easy matter to determine exactly what the real facts were, or the precise nature of the contract between William R. Blunt and his brother Bradley.

The testimony adduced in support of their respective theories is not merely divergent, but absolutely irreconcilable. The several witnesses contradict one another and frequently in different portions of their testimony contradict themselves, while all of them show clearly, either an interest in the ultimate result of the suit, or a plain bias in favor of one or the other of the chief parties litigant. There is hardly one of them who can be properly regarded as an impartial witness, whose testimony can be relied upon to establish the contention of one or the other of the brothers beyond any peradventure.

Something also is to be attributed to the lapse of five or six years which occurred between the time of entering into the

contract, and the time when the witnesses were called to give their testimony, and the frailties of human memory are well known.   Unfortunately not all of the witnesses are as frank as Mr. Smallwood, who in testifying to the contract between the brothers, unconsciously perhaps, disclosed what not unnaturally may have colored his testimony, when he said, "I had an apple in that bag myself."

It is evident that this did not apply solely to him, for Mr. Roddy, who superintended the sawing of the lumber, and who testified that his arrangement was with William R. Blunt, nevertheless rendered an account against both William R. and Bradley Blunt, which he explained or attempted to explain by saying in substance that his idea was to make somebody responsible to him for the amount claimed to be due, and that as looking to that end he made out the account against both of the brothers, and would in all probability have made it out just as readily against other or additional parties, had he supposed that thereby he could secure what he claimed to be due him.

If it were possible to restore the two Blunt brothers to their *status in quo* it would undoubtedly be a proper case for the Court to do so, and leave the parties in the situation which they had created for themselves.   This is no longer possible.   The timber upon the land which was devised to Bradley T. R. Blunt for life has been sold and cut, which effectually prevents a restoration of the parties to their former condition.

If the Court could indulge in probabilities, after a careful examination of all the testimony in the case, those probabilities would indicate an actual condition as follows: That the original agreement between the brothers was for the sale of between thirty and thirty-one acres of land by William R. Blunt to his brother Bradley, to be paid for by the timber on the land which Bradley was entitled to under his mother's will; that either when it was cut the timber did not amount to as much as William R. had expected, or the prices real-

ized for it were not as great, and William R. found that he had made an unsatisfactory bargain, and accordingly changed his front and sought to set up a cash sale, which was to be secured by a mortgage on the property. This theory he endeavored to substantiate by means of a memorandum in the handwriting of Bradley Blunt, and in which the term "mortgage" occurred. This memorandum, taken by itself, is far from clear, and to rest any conclusion solely upon the basis of it would be in the highest degree unsafe.

Nor is the agency of William R. Blunt for Bradley satisfactorily established or substantiated. Its nature, scope and extent are nowhere given by any of the witnesses, and much of the testimony which was offered for the purpose of showing an agency was equally applicable either to the question of agency or to the theory set up in the bill filed by Mr. Bradley T. R. Blunt.

For a proper determination, therefore, the case is narrowed to this; taking the two alleged contracts with all their differences, and each of which is about equally supported by the evidence, there is one fact which does clearly appear and of which there is no serious attempt of denial. The timber upon the lot in question was cut, and most of it sold, either to the B. & O. R. R. Co., Natwick & Co. and one or two others, and an account rendered by Bradley Blunt of certain timber which he received from the land for the building of the frame of a barn, or for the use of the county, and of these, accounts were rendered to William R. Blunt. As against these Mr. William R. Blunt seeks to make certain charges for moneys paid to the hands, for fodder for the mules, and some similar expenses, but these could only have been adduced as tending to support the theory of agency.

It is also testified, without serious contradiction, that whatever money was paid, was paid to William R. Blunt, and that, except for his own testimony, does not appear to have been paid to him in any other than his individual capacity. These facts tend, therefore, most strongly to support the

theory of a contract of the terms alleged by Mr. Bradley Blunt, the complainant.

No adequate reason is given for the judgment confessed by Mr. W. R. Blunt in favor of W. W. Parker, and shortly thereafter assigned to Mrs. W. R. Blunt, except the creation of a prior lien to forestall any enforceable liability to those to whom Mr. W. R. Blunt might subsequently become indebted. On this phase of the case the testimony of Mr. W. W. Parker is far from satisfactory. He took a confessed judgment against William R. Blunt for $2,500, and on the witness stand declared himself unable to say whether the amount due him, when he took the judgment, was $50 or $1,200, or some other amount.

Some stress was laid in the arguments, and in the brief of the appellant's solicitor, upon the form of the decree, and it was spoken of as being multifarious and decreeing relief in excess of that which was prayed in the bill.

This objection is without weight, when as in this case there had been a consolidation of two cases, in one of which the appellant was defendant and in the other plaintiff, and under the agreement of counsel of the respective parties upon the consolidation of the two cases, the decree to be entered was to be such as should fully meet the exigencies or rightful claims of both the appellant and appellee.

The Court had before it the entire subject matter and all the parties, and it appeared in the evidence that there were infant interests, as well as those of the litigating parties, whose interests it was the duty of the Chancery Court to fully guard and protect. While the decree is long and does embrace several matters of substantive relief, it does so in a way to obviate a multiplicity of suits, and under the peculiar facts of the case was a proper decree to be passed.

*Decree affirmed, the appellant to pay the costs.*

### On Motion for Reargument.

The motion for a reargument in the foregoing case must be denied. As will have been observed, the case presented in this Court by reason of the consolidation of two suits partook in some aspects of the nature of cross-bills, in which each of the parties has asked for a decree of specific performance. That asked for by William Blunt is for the conveyance to him of the land agreed to be given him under the terms of the compromise agreement by which the caveat proceeding was terminated. This claim does not appear to be seriously contested.

The case of Bradley Blunt is for the performance of a contract for the conveyance of a portion of the land so to be acquired by William Blunt. There is no denial of the fact that there was a contract between Bradley and William, the divergence being upon the question of the consideration agreed upon between the brothers. The claim of each upon this matter was succinctly stated in the opinion heretofore filed. So far as the evidence is concerned, the version of the consideration as given by Bradley is sustained by the great preponderance of direct testimony, while in connection with the testimony of William, the judgment confessed by him for twenty-five hundred dollars ($2,500.00) and its transfer to Mrs. Blunt have so many of the indicia of fraud surrounding them as to becloud all of the evidence of William.