## JEREMIAH A. WETHERALL

### *vs.*

## CHARLES A. HOFFMAN et al.

*Bill for Injunction—Specific Performance—Exhibits—
Laches—Description of. Contract.*

A bill for an injunction, which is not accompanied by
exhibits as required by Equity Rule 4 (Code, art. 16, sec. 142),
and which fails to account for their absence, is demurrable.

p. 687

· A bill for specific performance which fails to show by what
right plaintiff claims, whether by writing or not, and whether
the courses and distances in the bill are sufficiently described,
is demurrable. p. 690

A bill for specific performance of an alleged agreement made
by defendants' decedent, filed forty years after the date of such
alleged agreement, and twenty-six years after such decedent's
death, *held* demurrable, by reason of the failure to explain the
delay in bringing suit and also because of lack of certainty as
to the terms of the alleged contract, and of lack of averments .
as to plaintiff's readiness to comply with the terms thereof.

p. 691

*Decided March 15th, 1923.*

Appeal from the Circuit Court for Harford County, In
Equity (HARLAN, J.).

Bill by Jeremiah A. Wetherall against Charles A. Hoff-
man and others. From an order sustaining demurrers to
the bill, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John S. Young*, for the appellant.

*R. H. Archer* and *Harry S. Carver*, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order sustaining the demurrer of Charles A. Hoffman and wife and J. Ford Dorrance and wife to the bill of complaint filed by the plaintiff (appellant) against them and fourteen other persons named as defendants, by which the plaintiff seeks the specific performance of an agreement alleged to have been made with him by William G. Hall, deceased, for the conveyance of 3.61 acres of land. It also prays that J. Ford Dorrance and wife may be enjoined and prohibited from conveying the said 3.61 acres to Charles A. Hoffman, and that the said Hoffman may be enjoined from purchasing the same and accepting a deed therefor.

There can be no doubt that no injunction or restraining order could properly have been issued under this bill, as there were not filed any exhibits, or copies of the instruments referred to, and their absence is not accounted for. General Equity Rule 4, as amended (the former being also section 142 of article 16 of the Code), expressly prohibits the court from issuing an injunction or restraining order "until the originals or duly certified copies of all deeds or other instruments of record, and verified copies of all documents, papers or writings not of record, necessary to show the character and extent of the complainant's interest in the suit shall have been filed, if said instruments of writing be in possession of the plaintiff, or accessible to him; if not, that fact shall be stated in the bill or petition." In *Chappell* v. *Clark,* 92 Md. 98, it was held error to pass an order requiring a bond to be given by a trustee, as well as granting an injunction, before an exhibit was filed, and in *Beachey* v. *Heiple,* 130 Md. 683, we extended that objection to not filing a copy of a deed referred to. See also *Salisbury* v. *Camden Sewer Co.,* 135 Md. 563, 573, and cases cited. The demurrer could have been sustained on the ground that the exhibits referred to were not filed, or their absence accounted for, but the failure to file them could have been easily remedied, if that were all.

As the bill seeks to have specific performance enforced it is also defective in not setting out more particularly what is referred to. As was said in *Miller's Eq. Proc.*, 765, "Relief by way of specific performance being in the exercise of an extraordinary function of the court—in some cases an extreme medicine of the law—the plaintiff must make out a clear case in order to obtain the interposition of the court. The court will not make a decree in a doubtful case." It is said on page 782 of that volume: "In cases for specific performance the bill must accurately state the terms of the contract, so that it may appear to the court to possess all the elements necessary to entitle the plaintiff to relief; * * * It is necessary that the bill should fully and exactly disclose the nature and extent of the legal rights, and interests of those against whom the restraining and coercive power of the court is invoked." Again on page 783 it is said: "The proof must be clear and explicit, leaving no room for reasonable doubt, and must in every essential particular correspond with the terms of the contract set up in the bill." That, of course, means that the bill must set up a case about which there can be no reasonable difficulty in sustaining. When, then, we come to apply these and other rules applicable to specific performance, it would seem that the bill now before us falls far short of what they require in several respects. It alleges that the plaintiff and William G. Hall made an agreement over forty years ago by which, in consideration of the plaintiff agreeing to grant to him a road over land to be acquired by plaintiff, and clean up and open said land for travel, between land owned by Hall and what is spoken of as the New Cut Road, Hall would convey to him a parcel of land containing 3.61 acres more or less; that plaintiff in pursuance of the agreement and understanding cut down the trees, took out the stumps and cleared said piece of land for a width of twenty feet from a gate of said Hall to New Cut Road, and Hall took possession of and used the road, and he and those claiming under him have used it ever since, and "in further pur-

suance of said agreement the said William B. Hall put your orator into possession of and your orator entered into possession of the larger part of said strip of land described as aforesaid, and has ever since remained in possession thereof, and his possession thereof has been adverse, continuous, notorious and unbroken, claiming it as his own from the year 1879 until the present time; that your orator cleared up, grubbed and has brought into cultivation the said strip of land so entered in possession of as aforesaid, which said strip of land entered into possession of by your orator as aforesaid, is described as follows, that is to say"; that is then described by courses and distances, "containing about one and three-quarters (1¾) acres more or less."

It is alleged that Mr. Hall put the plaintiff in possession of another parcel of land adjacent to the parcel agreed to be conveyed, and to the easterly side thereof, containing 1.21 acres more or less, and agreed that if he failed to put plaintiff in possession of the piece or parcel of land lying southerly of the piece theretofore described, into which he did put him in possession, he would convey the additional piece of 1.21 acres of which he was put in possession and which he had possession of from the date of the agreement, to wit, 1879, to the present time, and that he had grubbed, cleared up and brought it into cultivation—the courses and distances of that tract being set out.

The bill then alleges that William G. Hall died about the 27th of December, 1893, intestate and without issue, seised and possessed of the lands mentioned, with the exception of several small parcels sold by him, and excepting what plaintiff had possession of, as described by the courses and distances; that after his death the lands of which he died seised were managed and controlled by his brother, Edward H. Hall, as one of the owners and as agent for the other owners and heirs at law of the said William, and they had knowledge of the agreement between plaintiff and William, and they and Edward always recognized the said agreement and ex-

pressed their intention of carrying the same more fully and completely into effect. The bill then mentions eight persons who are alleged to be the surviving heirs at law of William G. Hall and devisees of said Edward H. Hall, upon whom the interests of the said Edward in the lands of his brother have devolved; that in 1893, upon the death of William, two suits were instituted, in which Edward and Mr. Stevenson A. Williams were appointed trustees to sell the lands of William; that on February 5, 1918, Edward died and Mr. Williams was authorized to proceed alone as such trustee and he has sold to J. Ford Dorrance 278 acres of the land including in the description thereof, the lands William G. Hall agreed to sell and convey to plaintiff; that the sale has been ratified and confirmed and said Williams has conveyed to said Dorrance all of said lands sold to him excepting the 3.61 acres; that said Dorrance knew of the controversy between the plaintiff and the Halls and said Hoffman, and was put upon inquiry with reference to plaintiff's rights, and by reason of said notice he purchased said lands subject to the rights of the plaintiff, but in spite of said notice and of plaintiff's rights, Dorrance is attempting to sell the 3.61 acres to Hoffman, and has entered into an agreement with him to that effect, although Hoffman knew of his rights at the time of the attempted purchase; that said Dorrance is now demanding a deed for the land from said Williams, trustee, in order that he may convey same to Hoffman.

It is not shown by the bill what sort of an agreement plaintiff and William G. Hall had—whether in writing or not, or where the courses and distances given in the bill came from, or even when the lines were run, or became known. We do not mean to suggest that an agreement for the sale of land cannot be made orally, if the purchaser is put in possession and the terms are clearly shown, but the difficulty in this bill is that it is not shown by what right plaintiff claims, whether by writing or not, and if so, whether the courses and distances in the bill are sufficiently described. William G. Hall,

according to the bill, put the plaintiff in possession of some land in 1879, lived until 1893, but never made a deed to the plaintiff and there is no sufficient reason given for his not doing so. Then the bill was not filed until about twenty-six years after his death, and until a year after Edward Hall's death. The plaintiff does not allege either that he made a deed or offered to make one to William G. Hall or, after his death, to the heirs or others, which he was to make. He does allege that William G. Hall put him in possession of and he entered upon the larger part of the said strip of land described as aforesaid, which apparently referred to the 3.61 acres, and "has ever since remained in possession thereof, and his possession thereof has been adverse, continuous, notorious and unbroken, claiming it as his own from the year 1879 until the present time"—forty years before the bill was filed. If that is true, what more does he want the court to do? But he does not allege that he either demanded a deed from William G. Hall for the land he was to convey to him, or offered to give him one for the road, or the interest in the road he was to have.

We agree with the learned judge below that there is no such clear and convincing statement of a definite contract between the plaintiff and William G. Hall as would entitle him to a decree for specific performance, and having waited so long before and after the death of William G. Hall, a court of equity must hesitate to give relief unless the delay is satisfactorily explained, which is not the case. These and other reasons suggested above must cause us to affirm the order sustaining the demurrers.

> *Order of December 29, 1921, sustaining the demurrers, affirmed, with costs to the appellees, and cause remanded.*