## BELLEVUE CLUB, INCORPORATED, *vs.* JOSEPH E. PUNTE et al.

*Specific Performance—Description of Land—Renewal Covenant in Lease.*

In a suit for specific performance, the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the terms of the contract thus set up.                                                p. 598

The complainant must establish the allegations of the bill by clear, certain and convincing proof, and the proof required is greater than that demanded in most classes of civil cases.  p. 599

The description in a lease of the property leased as "all that tract of land situated on Middle River" and "known as the Chesapeake Fishing Club or Shore," with "the use of the woods to the open land in the rear," was too indefinite to justify a decree for the specific performance of a covenant for renewal of the lease as including part of the woods.                p. 599

The grant of "the use" of land does not constitute a lease thereof.                                                p. 599

In a suit for the specific performance of a covenant of renewal in the lease of a "shore," *held* that the evidence was insufficient to show the boundaries of the property for the purpose of the suit.                                    pp. 600-603

Wherever the equity of the case may lie, in a suit for specific performance, the court cannot supply a description of the land, if the parties by their contract have failed to do so. p. 602

*Decided June 29th, 1925.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by the Bellevue Club, Incorporated, against Joseph E. Punte and others. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*William P. Cole, Jr.,* and *Daniel S. Sullivan,* with whom was *Jefferson D. Norris* on the brief, for the appellant.

*Charles L. Merriken* and *Joseph France,* with whom was *Frank M. Merriken* on the brief, for the appellees.

WALSH, J., delivered the opinion of the Court.

This suit was brought to compel the specific performance of a renewal clause in a lease for a "shore" on Middle River in Baltimore County, the bill having been filed by the Bellevue Club, Incorporated, the appellant here, against Joseph E. Punte, Margarethe M. Punte, and Pauline Thelan (since deceased), the appellees.

The lease in question was made in 1901 to the Bellevue Club, a different corporation from the appellant, and reads as follows:

"This lease made this 22nd day of March, 1901, by and between Pauline Thelan, widow, of Baltimore County, of the first part, and the Bellevue Club, a body corporate of Baltimore City, in the State of Maryland City, in the State of Maryland, of the second part.

"Witnesseth, that the said Pauline Thelan, party of the first part, does hereby lease to the aforesaid party

of the second part, all that tract of land situate on Middle River, in Baltimore County, and known as the Chesapeake Fishing Club or Shore.

"Being the same tract of land heretofore leased by the party of the first part of the Chesapeake Fishing Club, with all the improvements thereon and the rights and privileges of the water fronting thereon, boats, outhouses, etc., now upon the premises for the term of five years from the date hereof, with the privilege of renewal for twenty-nine (10) years more, with the same conditions and agreements and with the privilege of the use of the woods to the open land in the rear. The party of the second part paying a yearly rental of twenty-five ($25.00) dollars in advance on the first day of July in each and every year during the continuance of lease for five years, and the yearly rental of fifty dollars thereafter. And the party of the second part do hereby agree to the aforesaid conditions, and they will pay the yearly rent aforesaid when due.

"Witness our hands and seals this day and date above written.

"Pauline Thelan.          (Seal)

"Wm. J. Cunningham,   (Seal)

"President Bellevue Club.

"Wm. H. H. Sultzer,      (Seal)

"Secretary Bellevue Club.

"This is to certify that the alteration from 10 years to 29 years was made before signing.

"Chas. Reviol,

"Justice of the Peace."

This lease was properly acknowledged, and duly recorded among the land records of Baltimore County.

At the expiration of the five year term in 1906 no renewal lease was executed or demanded, but the increased rent of fifty dollars per year was regularly paid until 1920, in which year, as well as in 1921, it was tendered by the tenant but refused by the owners. In 1913 the original Bellevue Club assigned the lease to a Mr. Moreland and five others, and later, by various mesne conveyances, their entire interest be-

came vested in Moreland and one William Oster, who remained in possession of the "shore" and paid the rent until June 2nd, 1920, when they conveyed their interest to Lewis Hax and his wife. These parties had been acting as caretakers of the property since 1918, and on June 3rd, 1920, they undertook to convey the property to the appellant by a fee simple deed, the description in this deed being by metes and bounds, and including part of "the woods to the open land in the rear." According to the testimony, the appellant paid $2,250 for the property at this time, which money went to Moreland and Oster, and did not go to Hax and his wife, so that these latter two appear to have acted as mere conduits for the transfer of the title.

At the time the lease was made in 1901, and for some time prior thereto, Mrs. Thelan owned a tract of about one hundred acres of land in Baltimore County, which tract included the "shore" in dispute. In 1897, Mrs. Thelan moved to Baltimore City, leaving her adopted daughter, Mrs. Margarethe M. Punte, and the latter's husband, Joseph E. Punte, in charge of the Baltimore County land, and in 1909 this land was conveyed to Mr. and Mrs. Punte, subject to an annuity of $250 in favor of Mrs. Thelan, and at the time this suit was brought Mr. and Mrs. Punte still owned about sixty acres of the land, which sixty acres included the part leased by the appellant.

In December, 1919, the appellees notified the caretaker Mrs. Hax that, beginning with July 1st, 1920, the rent for the "shore" would be $200 per year, and when the appellant tendered the $50 rent in June or July, 1920, it was refused, and it was again refused in 1921.

In May, 1920, James F. Klecka of Baltimore City became interested in the "shore," and he arranged through Hax, who was the janitor of the building in which his office was located, to purchase the property for the appellant. Klecka examined the property and the various improvements on it, and he then had a lawyer in his office, Mr. Jefferson D. Norris, examine the title. Norris testified that he first

made a physical examination of the property, and found that its southern boundary was the division line between the Punte property and that of the adjoining owner on the south, Mr. Weber, that the eastern boundary was Middle River, the shore frontage being about eighty-five feet, and that the western and northern boundaries were pointed out to him by Hax and a man named Foster, lessee of the adjoining shore on the north. According to Norris they told him the western boundary included the woods back to "the open land in the rear," though the width narrowed on the western boundary to about twenty-five feet, and the northern boundary was along the side of a small ravine running back from the river, and was marked by the remains of an old wire fence. With this information Norris secured a surveyor and had him run the lines as they had been ascertained by and pointed out to him, and with the description thus furnished by the surveyor, and the knowledge acquired by his examination of the paper title, he prepared the fee simple deed whereby Hax and his wife undertook to convey the land to the appellant. The deed from Hax and his wife having been secured, a mortgage of $10,000 was obtained on the property from a building association in Baltimore, of which association James F. Klecka was counsel, his father was president, and his brother vice-president. $2,250 of the proceeds of this mortgage was, according to James F. Klecka, used to pay the $2,250 purchase price, and the balance was expended in renovating and adding to the improvements on the property. It also appeared that the appellant corporation was organized in the office of James F. Klecka, that Klecka, Norris, and one Conrad Schroeter were the incorporators, that the charter provided that the company was to have no capital stock, and that the certificate was not filed with the State Tax Commission until July 30th, 1920, and it purports to have been signed and acknowledged on that date.

On July 1st, 1920, Klecka tendered the $50 annual rent to Joseph E. Punte, and upon his declining to accept it, Klecka gave him a written notice, signed by Klecka as presi-

dent of The Bellevue Club, Incorporated, stating that the
club intended to redeem the rent by paying him the sum
which the rent would amount to if capitalized at six per cent.,
and some time afterwards this amount ($833.33 1/3), with
interest, was tendered to Punte by Norris, acting as counsel
for the club, and was refused. Klecka also testified that he
made several similar tenders, and on one occasion offered to
pay Punte $2,500 for a deed for the ground, but all these
tenders and offers were declined.

At the time the property was taken over by the appellant,
the club house and other improvements appear to have been
in a bad state of repair, and the appellant undertook to fix
up the place. The extent of these improvements and the
exact times at which they were made does not clearly appear
from the record, but according to the weight of the testimony
the money expended on them was between $3,500 and $7,000,
and most of the improvements were made during the months
of June, July and August, 1920.

Being unable to get Punte to accept rent for the property
or to permit the rent to be redeemed, the appellant, on Jan-
uary 16th, 1922, filed a bill in equity in the Circuit Court
for Baltimore County, asking that Punte and his co-owners
be compelled to allow the appellant to redeem the rent in
accordance with the provisions of section 95 of article 21 of
the Code of 1924. The only description of the property in
this proceeding was that contained in the lease, a copy of
which was filed with the bill as an exhibit, and a demurrer
to the bill was sustained on the ground that this description
was too vague and uncertain, and the action of the parties
too negligent, to justify the court in granting the relief
prayed. On May 23rd, 1922, the appellant filed an amended
bill of complaint describing the property by the metes and
bounds set out in the Hax deed heretofore mentioned, and
asking for the specific performance of the clause in the orig-
inal lease providing for a renewal of the lease for twenty-
nine years, and for general relief. The appellees demurred
to this amended bill on the grounds of lack of equity, laches,

and claim barred by limitations, and the demurrer being overruled they filed answers setting up chiefly the following defenses:

1. That the description by metes and bounds contained in the bill was purely fictitious, and that it was impossible to obtain a description of the property sufficiently definite and certain to justify a court in decreeing specific performance.

2. That the appellant was guilty of laches in asserting its claim.

3. That the appellant, because of its conduct in accepting an apparent fee simple deed from Hax, and because of Klecka's activity in connection with this deed, did not come into equity with clean hands.

A voluminous mass of testimony was taken, and after a full hearing and argument the learned court below declined to grant any relief, on the ground that the description of the property, as disclosed by the lease and the testimony, was too uncertain to support a decree for specific performance, and The Bellevue Club, Incorporated, thereupon appealed. At the argument before this Court counsel for appellant stated that they did not rely on the original bill of complaint, but stood entirely on the case made by the amended bill and the testimony, so that we can disregard this original bill and the lower court's action in sustaining the demurrer to it.

The appellant contends that, although no renewal lease was ever executed, the various tenants of the property always understood that they were holding under the lease, and that their continuous possession and the payment of the $50 annual rent from 1906 to 1919, together with the recognition by the owners of the various assignees of the lease as tenants, was ample evidence to prove a holding under the renewal clause of the original lease. It also contended that it had no knowledge of the notice given to Mrs. Hax regarding the increase in the rent beginning July 1st, 1920; that it acquired possession from Mr. and Mrs. Hax, and also acquired under the Hax deed the entire interest in the original lease,

including the right to enforce the renewal clause; that in reliance upon these rights, and with the knowledge of Joseph E. Punte, it expended large sums of money in repairing and increasing the improvements on the property; that the boundaries of the land, as proved by the testimony, coincide with the lines set out by metes and bounds in the Hax deed, and include a strip of woods extending back to the open land in the rear; and that it would be highly inequitable to hold that the appellant has no rights in the property other than as a tenant from year to year, and thus cause it to lose the money it has expended in improving the property. The appellant also claims that, if the Court finds that the boundaries of the land in dispute do not include "the woods to the open land in the rear," it is at least entitled to a decree for the shore frontage and the land covered by the improvements, and shown to have been occupied by the appellants and the preceding tenants.

The appellees, on the other hand, say that just prior to the expiration of the original lease in 1906, Joseph E. Punte asked the tenants then in possession if the renewal lease was to be taken by them, that he was told that the club had not decided the matter but some one would probably see him about it, that no one ever did see him about it, and that he accepted the rent thereafter on the theory that the tenants were merely holding from year to year. They further allege that the various assignees who took possession of the property, including the appellant, had notice from the land records that there had been no renewal of the lease, that none of them ever asked him about the matter and that they therefore took the property at their own risk. That when the appellant tendered him $50 rent on July 1st, 1920, less than a month after it took possession, he declined to accept it, and notified Klecka that he would not recognize the appellant as his tenant, that by far the greater part of the improvements placed on the property by the appellant was placed there after he had so notified Klecka, that the amount and value of these improvements was less than the appellant alleged,

nearly all the buildings having been there when the appellant took possession of the property, that, as admitted by the appellant, $2,760 of the money expended was recovered from a fire insurance company, and paid on the mortgage heretofore mentioned, as a result of a fire which destroyed the main club building and damaged one of the other buildings, and that the value of the improvements made by the appellant was little, if any, in excess of this sum. The appellees also insisted that there were no definite boundaries to the land in question, that when the original lease of 1901 was made, as well as when a prior lease, which contained the same description, was made in 1896, it was simply the intention of both sides to secure the right to use a small portion of the river frontage for fishing and boating purposes, that this carried with it the right or privilege to use part of the adjoining land close to the river, but that no definite boundaries had ever been fixed, nor were any contemplated. That the right to use "the woods to the open land in the rear" did not mean the exclusive right to use them, but was simply a privilege enjoyed in common with other shore tenants to use the woods as a means of ingress and egress to the various "shores," and that it was impossible to ascertain with any certainty even the boundaries of the land close to the river occupied by the appellant and its predecessors.

The appellees also contended that the boundaries set out in the Hax deed were purely fictitious, that although Mrs. Hax had, at one time, asked Joseph E. Punte for the lines of the property, the appellant never had asked for them, but had undertaken to fix them without reference to the appellees, that Punte had not given the lines to Mrs. Hax because there were no lines, but that he had been willing to fix them, when she asked him, in accordance with an old plan he had worked on some years before for laying out all the shore properties owned by him, but that before he had been able to look up this old plan, which was made after 1901 and had never been completed, Mr. and Mrs. Hax sold out to the appellant. And they alleged finally that since the appellant

took the property without knowing its boundaries, and the improving was done for the most part after the appellees had notified the appellant they would not recognize it as a tenant, there are no equities on the side of the appellant, and the vagueness of the boundaries, and the delay of at least fourteen years in asking for a renewal of the lease, disentitle the appellant to any relief. The case presents some unusual features, and a number of interesting questions might be discussed in connection with it, but in the view which we take of the matter it will only be necessary to determine the sufficiency of the description of the property.

The rules governing specific performance cases have been so often announced by this Court that it seems almost unnecessary to again set them forth, but we deem the following principles to have special application to the case at bar.

In all cases for specific performance the contract must be accurately stated in the bill and the proof must in every essential particular correspond with the terms of the contract thus set up. The proof must be clear and explicit, leaving no room for reasonable doubt. *Semmes v. Worthington,* 38 Md. 298; *Smith v. Crandall,* 20 Md. 482, 500, 501; *Ward v. Newbold,* 115 Md. 692; *Hopkins v. Roberts,* 54 Md. 312, 317; *Rickard v. Neff,* 130 Md. 94; *Polianski v. Polianski,* 138 Md. 602; *Stern v. Shapiro,* 138 Md. 625; *Wetherall v. Hoffman,* 142 Md. 686, 688; *Miller's Equity Procedure,* sec. 676.

In *Walpole v. Oxford,* 3 Ves. 402, the Lord Chancellor said that "all agreements to be executed in equity must be certain and defined, equal and fair, and approved as the law requires; and that it was enough to doubt upon anyone of these points to refuse relief." And this statement has been repeatedly approved by this Court. See *Mundorf v. Kilbourn,* 4 Md. 459; *Polianski v. Polianski, supra,* and *Gorsuch v. Kollock,* 139 Md. 469.

While it may not be accurate to say that a contract must be proved "beyond a reasonable doubt" before the courts will decree its specific performance, it is unquestionably true

that in such cases the complainant must establish the allegations of the bill by clear, certain, and convincing proof, and the proof required "is greater than that demanded in most classes of civil cases." *Blunt v. Blunt,* 136 Md. 194, 197; *Stern vs. Shapiro, supra; Gorsuch v. Kolloch, supra.*

Applying these rules to the description contained in the lease we are considering in this case, it seems obvious that the description is too indefinite. There are cases in which the designation of property by the name it was usually called, or reference to it as being occupied by a certain tenant or owner, has been held sufficient, but this method of description will not suffice in this case. Here we are not dealing with a distinct and entire property, but we have a lease of a shore property which is part of a much larger tract, and the chief value of which, when the lease was made, as well as now, was its location on Middle River. There is nothing in the lease to show either the extent of the shore or how far back the land extended, and the expression "with the use of the woods to the open land in the rear" certainly does not indicate a lease of these woods. In fact it indicates just the contrary, and this is made even more clear by reference to the lease of 1896, which described the land as "all that tract of land situate on Middle River in Baltimore County and known as the Chesapeake Fishing Club or Shore," but contains no mention of the woods, or the right to use the woods. If the land occupied by the club had included these woods there would certainly have been no need to give the "use of the woods" in the subsequent lease, and the granting of the "use" did not constitute a lease. *Chambers on Leases* (Eng. 1819); *Tiffany, Landlord & Tenant,* sec. 7, p. 20.

As the description by metes and bounds set out in the bill of complaint includes at least part of "the woods to the open land in the rear," it must be held from what we have said that the description in the lease is not in itself sufficient to prove the correctness of the description by metes and bounds in the bill, and hence that description must depend for its proof upon the testimony.

In our opinion the southern and eastern boundaries are established by the division line between the Punte and Weber properties, and Middle River, respectively, but in ascertaining the northern and western boundaries there is a great deal more difficulty.

The "shore" in question is bounded on the north by another "shore," which is also part of the entire Punte tract, and much of the more than three hundred pages of testimony was devoted to trying to fix the division line between these shores. None of the appellant's witnesses were on the property when the original lease was made in 1901, and Moreland was the only one who had really known the property more than a few years before the suit was brought. Most of the testimony dealt with an alleged wire fence running from a point near the river back through the woods, and it is strongly insisted that this wire, taken in connection with a ravine along which it was said to run, established the northern boundary. But to this we cannot assent. Many of the witnesses, including Moreland, described this wire as chicken wire, and some of them testified that it was not a boundary line but had been erected as part of an enclosure to keep chickens from going on the adjoining shore, and that it did not extend more than a few feet. Others failed to notice any wire at all, practically none of them testified positively as to its extension into the woods, and the county surveyor, Mr. Whitney, who surveyed the appellant's "shore" in 1922, testified that there was at that time no wire or other evidence of a "line of possession up that ravine," and "no line of possession marked" in the woods. Hax, one of the two parties who showed Mr. Norris the supposed boundaries, could not have known them definitely, because shortly before that, time, when he and his wife were considering the purchase of the shore, Mrs. Hax, apparently with his knowledge, had tried to obtain the boundaries from Mr. Punte, and it does not appear from the record what knowledge the other party, Mr. Foster, had about the line, other than that in 1920 he was living on the adjoining shore. Testimony of

this character is certainly insufficient to establish the northern boundary as being on the line set out for it by metes and bounds in the bill of complaint, and as it also fails to establish any other line, we are compelled to hold that the appellant has failed to prove the northern boundary with sufficient certainty to justify a court in decreeing specific performance.

The testimony regarding the western limits of the property is even more contradictory and uncertain than that referring to the northern line. It consists largely of the vague statements of a few witnesses about an alleged fence along the edge of the woods in the rear of the property, and there is also some evidence that the paths and roads through these woods were used exclusively by the tenants of the property in dispute. But the weight of the evidence is to the effect that these paths and roads were used by all the shore tenants indiscriminately, and the entire testimony on this part of the case is so indefinite that the appellant itself has asked that if the Court finds that this western boundary has not been established, a decree be given for at least so much of the property as the appellant and its predecessors may have been shown to occupy.

Without further detailing the testimony, practically all of which is vague, uncertain and contradictory, we deem it sufficient to say that in our opinion the appellant has failed to establish the lines of the property which it seeks to have lease to it, and as the court is unable to tell from the evidence just how much of the property was actually used and occupied by the appellant and its predecessors, we are unable to grant any of the relief asked.

The appellant cites the case of *King v. Kaiser,* 126 Md. 213, in which the description of a fishing "shore" was held sufficiently definite to entitle the complainant to a decree, the Court saying, at page 218, "while it may well be that the description could have been more precise, it cannot be assumed, * * * that a surveyor could not go upon the ground and identify and mark it out definitely. Certain distinct

landmarks are called for, and if anyone of them should not be found it would be a comparatively easy matter to reverse the call from another, and so fully locate the premises." But in the present case no landmarks are called for, and the surveyor who did endeavor to run the lines was compelled to locate two of them by means of vague alleged possession lines pointed out to him by two persons who had only known the property a comparatively short time. It is accordingly obvious that the case just mentioned furnishes no authority for the appellant's claim in this case, and indeed the language above quoted intimates rather strongly that a description such as we are now considering is not sufficiently definite. See also *Gorter v. Gale,* 86 Md. 687; *Myers v. Forbes,* 24 Md. 598, 611; *Stoddert v. Tuck, Excr.,* 5 Md. 18, 28; *King v. Wood,* 7 Mo. 389; *Bradley v. Haven,* 208 Mass. 300; and note in 36 *L. R. A.* (N. S.) 154.

It may be that the greater equity in this case lies with the appellant, though it may be argued strongly that it went into the matter, and spent its money, with at least sufficient knowledge to put it upon inquiry as to the precise nature of the tenancy it would have, and the extent of the property it was to hold, but, wherever the equity lies, the court cannot supply a description of the land where the parties by their contract have failed to do so.

As was said in the case of *Wash., B. & A. R. R. Co. v. Moss,* 127 Md. 12, 21: "It is not for courts to make contracts for parties, but to maintain, unimpaired, the established rules of law."

Finding no errors in the decree appealed from, it will be affirmed.

*Decree affirmed, with costs to the appellees.*