### MARTIN *v.* MICHAELS ET UX.

[No. 21, September Term, 1970.]

*Decided October 21, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John C. Sullivan* for appellant.

No brief filed on behalf of appellees.

Digges, J., delivered the opinion of the Court.

This appeal comes to us from the Circuit Court for Allegany County, which at the conclusion of the complainant's case granted the defendants' motion to dismiss a complaint for specific performance. Assuming the truth of all the evidence and reasonable inferences to be drawn therefrom in a light most favorable to the complainant, Maryland Rule 535, the following facts emerge.

On November 12, 1968 the complainant, Delbert Martin, entered into an oral agreement with the defendants, Wilbert Michaels and his wife, to purchase a garage and land located in Allegany County, supported by the following writing:

"Nov. 12, 1968

Received of Delbert Martin $150.00 for garage & ground on Main (Rt. 36) St., Mt. Savage, Md.

/s/ Mrs. Wilbert Michaels, Jr."

There is no dispute as to the occurrence of this transaction or that Martin took immediate possession of the garage. There is a dispute, however, as to the extent and boundaries of the land contracted for, especially since it is only a part of a larger tract owned by the Michaels. The defendants admit the agreement, but assert that it was for the garage and only the ground on which it sits. The complainant contends that the contract not only encompassed this but also additional land agreed to at the time of purchase.

Judge Naughton granted the motion to dismiss, finding 1) that enforcement of this agreement was barred by the Statute of Frauds, and 2) that specific performance could not be granted because of the uncertain and vague description of the property.

Since under our view of the case specific performance can only be authorized as to the garage and ground on which it rests, the Michaels' answer to the bill of complaint is in itself sufficient to obviate the necessity of sat-

isfying the Statute of Frauds. The very first paragraph of their answer states: "They admit that the Plaintiff paid the sum of $150.00 to the Defendants for a garage located on Main Street in Mt. Savage, and received a receipt therefor . . . ." Similarly, in paragraph seven, ". . . they deny that *any land other than the land on which the garage is located was sold to the Plaintiff.*" (Emphasis added.) It is well settled in this state that:

> "The court will enforce the specific performance of a contract within the statute, not in writing, where it is . . . confessed by the answer of the defendant and the statute is not relied upon as a defence. In such a case relief is granted upon the ground that as the statute was intended to prevent fraud and perjury, there can be no danger of either where the contract is . . . confessed in the answer; or upon the ground that the defendant has waived the benefit of the statute."

Miller, *Equity Procedure,* § 701; *Trossbach v. Trossbach,* 185 Md. 47, 42 A. 2d 905 (1945); *Hensel v. Calder,* 135 Md. 487, 109 A. 195 (1920). While the answer in this case does mention the Statute of Frauds as a defense, the defendants restrict its use to an attack on the allegations seeking property beyond the garage and the land on which it rests.

The more substantial question, therefore, deals with the problem of trying to specifically enforce a contract which may be uncertain in its description. It is well settled in this and other jurisdictions that a bill for specific performance can be successfully maintained as long as:

> " 'the description [of the land used in the contract] . . . be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description

need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required.' (Citations omitted.)" *Powell v. Moody,* 153 Md. 62, 66, 137 A. 477, 478 (1927).

*Sears v. Polan's,* 250 Md. 525, 243 A. 2d 602 (1968); *Grooms v. Williams,* 227 Md. 165, 175 A. 2d 575 (1961); *Baker v. Dawson,* 216 Md. 478, 141 A. 2d 157 (1958); *Neuland v. Millison,* 188 Md. 594, 53 A. 2d 568 (1947); *Brockmeyer v. Norris,* 177 Md. 466, 10 A. 2d 326 (1940); *Loughran v. Ramsburg,* 174 Md. 181, 197 A. 804 (1938). This is true whether the agreement is written or oral. *Lorenzo v. Ottaviano,* 167 Md. 138, 146, 173 A. 17 (1934).

The question before us then is whether the agreement set out in the evidence describes the property with enough certainty to ascertain its boundaries and to authorize the granting of specific performance. Martin offered the only evidence to show that the agreement was for more than the garage and the land it sits on. The several descriptions which he provided, however, simply add to a maze of fact and only aid in clouding rather than clarifying this dispute.

Initially Martin relates the discussion which occurred at the time the contract was consummated:

" 'I'll give you $150.00 for the garage and ground.' 'Well', he said, 'okay'. I said, 'How big is the ground?' He said, 'Debs', he said, 'I think there's ten-tenths of an acre there.' I said, 'Now, Tim, there can't be no ten-tenths of an acre', I said, 'that's a whole acre of ground.' I said, 'That's more ground than you got.' 'Well', he said, 'maybe it's one-tenth of an acre.' I said, 'Well how big is it?' 'Well', he said, 'it runs from the cement steps over to Tom Hughes and up to the top of the hill.' So that's all there was anything said about it."

Later Martin modifies this description.

"Q. How far back from the highway did you

clear the Michaels' land? A. I cleared it off right back where Mr. Michaels told me to, right back to the top of the hill.

Q. To the top of the hill? A. No, I didn't go clear to the top of the hill. I just cleared off where he told me to, where he *thought* the line went, one-tenth." (Emphasis added.)

In further testimony Martin himself admits he was not sure as to the boundaries agreed upon.

"Q. Well isn't it true at that time, didn't you agree to buy another piece of land behind the garage for $100.00 from Mr. Michaels. A. Well, Mr. Michaels when I started to clear it off he said, 'Now Debs', he said, 'this piece of ground don't go with it.' I said, 'Well, Tim, if it doesn't go with the ground, with the ground I already bought,' I said, 'I'll go ahead . . . .' " (This concluded his answer.)

Yet another illustration of his uncertainty relates to an incident occurring several months after the original transaction.

"So in March of 1969, I bought a piece of ground off of Mrs. Stan Buckley, off of him and his wife, right next door to it and gave the woman $300.00 for it. And I called Mr. Michaels then, and I said, 'Tim, I'd like to have your deed now so I could have them both all made in one deed.' And so he said he couldn't find the deed. I said, 'Well how big is the piece of ground?' 'Well', he said, 'I *feel* it runs from the steps over to Mr. Tom Hughes.' So we measured it off, it's a piece of ground one-tenth of an acre. It's a piece of ground approximately thirty feet wide and a hundred thirty-five foot long." (Emphasis added.)

These statements, not only inconsistent, but also vague and ambiguous, reach a startling crescendo when Martin

refutes one of the allegations set forth in his own pleadings. The bill of complaint only asks for "a certain tract of land, size 70 x 90 feet, and a garage thereon, which is located on Main Street, West End on Route No. 36." But Martin testified, "Well, I'm not claiming actually it's 70 x 90. I'd just like to have what Mr. Michaels and I agreed to, a piece of ground 30 x 130 feet." [1]

From this and the other evidence we conclude that while some of the boundaries may be ascertainable, such as the line "from the cement steps over to Tom Hughes'," a boundary description such as "the top of the hill"— "but not clear to the top of the hill" is just too vague and indefinite to permit specific performance. The statement "a piece of ground approximately thirty feet wide and a hundred thirty-five foot long" is not only vague and inconsistent with his later "30 x 130" description but it is also a geometric impossibility in light of a sketch which Martin drew at trial showing the ground in question was not shaped as a parallelogram. The figures "thirty feet and a hundred thirty-five feet" indicate land in which the opposite sides are of equal length, but by his sketch and verbal explanation he had described a quadrilateral with unequal sides. *Baker v. Dawson, supra,* at 490-91, and cases cited therein.

Viewing this testimony under the most favorable circumstances for the complainant we must conclude that he has not made out a case for specific performance. The courts cannot supply a description of land where the parties by their own contract have failed to do so. *Bellevue Club v. Punte,* 148 Md. 589, 129 A. 900 (1925). The only certain description of any property in this case is of the garage and the land upon which it rests, including, with-

---

1. The description used in the bill of complaint was apparently adopted from the description used on the tax bill which Michaels gave Martin to pay. The discrepancy between his pleadings and his testimony shows, however, that the bill of complaint, which should accurately identify the property sought, does not do so. This in itself can prevent a decree for specific performance unless the trial court, in the exercise of its discretion, permits amendment. Standard Homes v. Pasadena Co., 218 Md. 619, 147 A. 2d 729 (1959); Bellevue Club v. Punte, 148 Md. 589, 129 A. 900 (1925).

out doubt, the land, if any, between the building and the public highway. This much, at least, the parties agree was part of the transaction, and for this the trial court should have authorized specific performance. *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 455, 171 A. 2d 736 (1961). However, since the record shows that the defendants offered to cancel the contract and refund the purchase price, the complainant should be given an election: He should either be refunded his money or, upon a proper amendment of his complaint, be granted specific performance, with no diminution in price, as to the garage and the ground on which it sits. *Stirn v. Segall*, 251 Md. 240, 247 A. 2d 252 (1968); *Diggs v. Siomporas*, 248 Md. 677, 237 A. 2d 725 (1968); *Westpark, Inc. v. Seaton Land Co., supra* (which has a decree with similar election provisions). Because of the conceptual impossibility of measuring the land between the known garage boundaries and the unknown outer boundaries, there is no basis for allowing an abatement of the purchase price. Pomeroy's *Specific Performance of Contracts*, §§ 434, 444, 454 (3rd ed. 1926).

Ordinarily, this case would be remanded to allow the defendants an opportunity to dispute the existence of the contract itself. But with the unequivocal concessions in their answer that there was a contract for the garage and ground on which it sits, such a procedure would be futile.

> *Decree reversed and case remanded for passage of a decree in conformity with this opinion. Costs to be paid by the appellees.*